[No. 18137. Department One. — October 2, 1893.]

J. M. WELLS, RESPONDENT, *v.* JOHN MANTES ET AL., APPELLANTS.

WATER RIGHTS — APPROPRIATION OF STREAM — COMPLIANCE WITH CODE. — One who appropriates the waters of a running stream by an actual diversion thereof for the purposes of irrigation, acquires the right to the use thereof as against a claimant who subsequently posts his notices upon the stream in accordance with section 1415 of the Civil Code, and proceeds thereafter, as required by statute, to perfect his rights, although the prior appropriator has not followed the statute in making his appropriation.

ID. — OBJECT OF CODE PROVISIONS — RELATION. — The scope and purpose of the provisions of the Civil Code upon water rights was merely to establish a procedure for the claimants of the right to the use of the water whereby a certain definite time might be established as the date at which their title should accrue by relation; and a failure to comply with the rules there laid down does not deprive an appropriator by actual diversion of the right to the use of the water as against a subsequent claimant who complies therewith.

ID. — CONSTRUCTION OF CODE — "CLAIMANTS" NOT INCLUSIVE OF ACTUAL APPROPRIATOR. — The word "claimants" in section 1419 of the Civil Code, which provides that a failure to comply with the rules of the code "deprives the claimants of the right to the use of the water, as against a subsequent claimant who complies therewith," refers to a party posting and recording the notices required by the provisions of section 1415 of the same code, and does not apply to an appropriator by actual diversion.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. P. Meux*, and *A. W. Thompson*, for Appellants.

*Sayle & Coldwell*, for Respondent.

GAROUTTE, J. — This is an action to restrain appellants from diverting the waters of a certain stream, and thereby depriving plaintiff of the use thereof. The plaintiff, by actual diversion, appropriated two thousand five hundred inches of the water of the stream for the purpose of irrigation. Subsequently defendants, at a point a mile or more above plaintiff's place of diversion, posted notices in accordance with the provisions of the Civil Code, and proceeded to claim and appropriate the waters of the said stream regardless of any rights of plaintiff to such waters obtained by virtue of his actual appropriation. The only question presented by this record is: Can a person, by the actual diversion and appropriation of water, obtain the right to the use thereof as against a claimant who subsequently posts his notices upon a stream, in accordance with section 1415 of the Civil Code, and proceeds thereafter, as required by the statute, to perfect his rights? We have no doubt but that an actual and complete appropriation of the waters of a running stream may be made without following the course laid down in the Civil Code. In *De Necochea* v. *Curtis,* 80 Cal. 397, which was subsequently followed in *Burrows* v. *Burrows,* 82 Cal. 564, it was decided that such an actual appropriation was good as against a subsequent pre-emptioner of the land upon which the spring was situated, from which the appropriated water flowed. Such was declared to be the law by virtue of the Amendatory Act of Congress of July 9, 1870, which, among other things, provided that "all patents granted, or pre-emptions or homesteads allowed, shall be subject to any vested or accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the ninth section of the act of which this act is amendatory."

It was held that, by virtue of the act of Congress quoted, defendant took his title from the government with a servitude resting upon the land. The spring from which the stream flowed was situated upon the land pre-empted, and therefore was the property of the defendant Curtis. And in contesting De Necochea's right to the use of the water running from the spring, the pre-emptioner in no sense could be classed as a mere trespasser seeking to interfere with the rights of the party

enjoying the actual possession of the water. He occupied a position much stronger than as a mere subsequent appropriator, for as to such a one it is apparent at a glance he would have had no rights whatever. In order to defeat the defendant's claims in that litigation it was necessary to hold that the prior appropriator had a right to the use of the waters of the stream, by virtue of his actual appropriation and possession, beyond that which was sufficient to defeat a mere intruder, for that term in no sense could be applied to the pre-emptioner Curtis. If a right to the use of the water of the stream, merely sufficient to defend against a trespasser, would not have been sufficient to defeat the pre-emptioner, it follows necessarily that the pre-emptioner, being defeated in that case, the prior appropriator was recognized as possessing vested rights to the use of the water by actual diversion and without complying with the provisions of the code. It is substantially held in that case that, when the pre-emptioner took his title, he took it with a servitude upon the land ; and this servitude was not created by complying with the statute as to the appropriation of water, but by an actual diversion alone. For these reasons we deem that case directly in point upon the question at bar.

As supporting the determination that a vested right to the use of water may be secured without invoking the provisions of the code, it must be remembered that the congressional legislation quoted was enacted, as is said in *Broder* v. *Water Co.,* 101 U. S. 276, for the purpose of recognizing pre-existing rights to the use of water, rather than establishing new rights.

Again, we cannot bring ourselves to think that a mere subsequent appropriator under the code occupies a better position than the pre-emptioner whose situation we have just been discussing, and whose rights to the waters of the stream we have held to be secondary to those of the prior appropriator. To say that the pre-emptioner has no rights against the prior appropriator, but that the subsequent appropriator by posting notices, etc., has a superior right to the prior appropriator, is inconsistent in the extreme. Such a practice would result in an unjust discrimination, and has no sound support in the law. If the prior appropriator has sufficient rights in the water to defeat the pre-emptioner, and we have decided such to be the

case, he has sufficient right to defeat the subsequent appropriator under the code.

Section 1418 of the Civil Code reads: "By a compliance with the above rules the claimant's right to the use of the water relates back to the time the notice was posted"; and we think the scope and purpose of all the provisions of the chapter upon water rights was to establish a procedure for the claimants of the right to the use of water, whereby a certain definite time might be established as the date at which their title should accrue. In this connection we quote again from *De Necochea* v. *Curtis, supra,* wherein the court, speaking of this question, said: "In this provision we begin to see the purpose and object of the legislature which, in our opinion, was merely to define with precision the conditions upon which the appropriator of water could have the advantage of the familiar doctrine of relation upon which it had always been held before the statute, that one who gave sufficient notice of his intention to appropriate, and followed up his notice by diligent prosecution of the work, was upon its completion to be deemed an appropriator from the date of his notice, and was, therefore, prior in time and stronger in right than an intervening appropriator, notwithstanding his diversion of the water might be first completed." No possible injury can result from this construction of the statute. A party contemplating an appropriation of water from a stream is furnished with more definite information for his guidance as to the character and extent of the appropriation by an actual diversion than could possibly be obtained from the notices provided by the statute.

To defeat the respondent's rights, appellants invoke section 1419 of the Civil Code, which reads: "A failure to comply with such rules deprives the claimants of the right to the use of the water as against a subsequent claimant who complies therewith." We think this provision does not refer to an appropriator by actual diversion, but only to claimants seeking the right to the use of water under the provisions of this chapter of the code. This is made apparent by an examination of the preceding sections. Section 1415 provides: "A person desiring to appropriate water must post a notice, in writing, in a conspicuous place at the point of intended diversion, stating

therein: that he *claims* the water there flowing to the extent," etc. Section 1416 reads: "Within sixty days after the notice is posted the *claimant* must commence the excavation or construction of the works," etc. Section 1418 reads: "By a compliance with the above rules the *claimant's* right to the use of the water relates back to the time the notice was posted." It thus becomes apparent from these provisions that the word "claimants," as used in section 1419, refers to a party posting and recording the notices required by the provisions of section 1415, and does not apply to an appropriator by actual diversion.

For the foregoing reasons, it is ordered that the judgment and order be affirmed.

HARRISON, J., and BEATTY, C. J., concurred.