(November 10, 1905.)

# SAND POINT WATER AND LIGHT COMPANY v. PAN-HANDLE DEVELOPMENT COMPANY.

[83 Pac. 347.]

WATER LOCATION—POSTING NOTICE OF CLAIM—DILIGENCE IN PROSECU-TION OF WORK—COMPLETION OF APPROPRIATION—PRIORITIES AS BETWEEN DIFFERENT CLAIMANTS.

1. One who posted and recorded notice of intention to appropriate waters under act of February 25, 1899 (Sess. Laws 1899, p. 380), and within sixty days thereafter commenced work on his proposed diverting works and continued the prosecution of such work with reasonable diligence, is entitled to have his appropriation date from the posting of his notice and the right thus acquired is prior and superior to the rights of any subsequent appropriator claiming either by posting of notice and compliance with the statute or an actual diversion and application of the water.

2. One who posts and records notice, and in all respects pursues the successive steps prescribed by act of February 25, 1899, is entitled to have his right relate back to the date of posting notice.

3. In such case the appropriation is initiated by posting the notice, and an inchoate right thereby arises which may ripen into a complete appropriation upon the final delivery of the waters to the place of intended use.

4. A person desiring to appropriate the waters of a stream may do so either by actually diverting the water and applying it to a beneficial use, or he may pursue the statutory method by posting and recording his notice and commencing and prosecuting his work within the time and in the manner prescribed by the statute, and in the latter case his right will relate back to the date of posting his notice.

5. Where an appropriator posted his notice on December 16, 1902, claiming a certain amount of the waters of a stream, and thereafter and on the fourteenth day of January, 1903, commenced work on roads, surveys, etc., preparatory to constructing the diverting works and kept at least one man at the work continuously from that date until date of trial and expended over $1,700 on the work from the commencement thereof until February 8, 1904, and had built one mile of wagon road along the course of the stream, and had built three thousand four hundred feet of flume, and such work was prosecuted in a mountainous country where the winters are long and rough and the snowfall is heavy, *held*, that the work has been prosecuted with reasonable diligence as required by section 6 of act of February 25, 1899 (Sess. Laws 1899, p. 381).

(Syllabus by the court.)

APPEAL from District Court in and for Kootenai County. Honorable Ralph T. Morgan, Judge.

Plaintiff, the Sand Point Water and Light Company, commenced an action against the defendant, Panhandle Development Company, praying an injunction against the defendant to restrain and enjoin defendant from diverting the waters of Switzer and West Sand creek, or in any manner interfering with them or depriving plaintiff of the use thereof. Judgment for plaintiff, from which judgment and an order denying defendant's motion for a new trial, defendant appealed. Reversed.

William H. Batting, E. M. Heyburn and M. A. Folsom, for Appellant.

The term "appropriate," as applied to the public waters of the state of Idaho, does not have the meaning applied to it by the district court in the trial of this cause, but includes a series of acts commencing with the posting of a notice at a given point on a stream of water, and ends with the application of the waters to some beneficial use or uses, and to that end the legislature has provided that the appropriators shall have a reasonable time within which to apply the water to such uses. Under the new law of 1903, under which respondent secured his water permits, the legislature has been most generous in allowing the appropriator nine (9) years within which to apply the water to the use for which it was intended. The laying of respondent's water pipes and connecting the town of Sand Point with the creek in question required about two (2) months. If there had been any question of acquiescence on the part of the appellant sufficient to create an estoppel, appellant had a right to assume that respondent intended only to use the waters of West Sand or Mill creek, not used by appellant, and rely on Switzer creek for its main supply, but we only make this suggestion in view of the fact that the court said some things in connection with its findings of fact which led us to believe that the trial court thought it necessary for us to assert our rights, either by force or arms or by some other appropriate method, notwithstanding the fact that this suit was commenced shortly after respondent commenced its work, and the records of the district court show that respondent applied for a restraining order, and after reading the affidavits of both parties, the judge of the district court went on the ground upon the canyon about the last of July, 1904, and after viewing the ground, for some reason respondent never renewed or pressed its application for an injunction, and nothing further was ever heard of it. During the summer of 1903, plaintiff, in order to cover any question of headgates and other regulations under the new law, took out a water permit supplemental to its rights under the three (3) water locations, and counsel for respondent undertook to suggest at the trial that such action on the part of the appellant was a waiver or abandonment of its original rights. We

do not think that a suggestion of this kind should be presented in argument to this court, since under the law of possessory rights, whether it be applied to water rights or to mining claims, abandonment is a question of intention, and we think that the intention of the appellant is sufficiently shown from the fact that within two years of the date of the first location it had built a mile of road, graded and built one-half mile of expensive flume and put in its dam, built its smelting plant, and was just ready to put the water to beneficial uses when this unfortunate decision of the district court was given in favor of the respondent. Due respect to the trial court compels us to believe that all the errors committed at the trial and afterward arose from a misunderstanding of the term "appropriate" as applied under the "law of water rights." Appellant's rights were, and are by authority of section 2825 of the Revised Statutes of Idaho, vested rights, and could not be disturbed or lessened by subsequent legislation, or by permits granted by the state engineer. (*Ada Co. Farmers' Irr. Co. v. Farmers' Canal Co.*, 5 Idaho, 793, 51 Pac. 990, 40 L. R. A. 485; *Hall v. Blackman*, 8 Idaho, 272, 68 Pac. 19.) Respondent acquired no rights as against appellant by turning the water out of the creek while appellant was engaged in its development work. (*Salt Lake City v. Salt Lake City Water etc. Power Co.*, 24 Utah, 249, 67 Pac. 673, 61 L. R. A. 648.) On the question of reasonable time, we refer to *Taughenbaugh v. Clark*, 6 Colo. App. 235, 40 Pac. 153. In the case of *Last Chance Min. Co. v. Bunker Hill & Sullivan Min. Co.*, reported in 131 Fed. 586, it was held that where a party is in possession of a mining claim, the failure to record the notice does not invalidate the location.

Charles L. Heitman, for Respondent.

The amended answer is set forth in full in the transcript. Appellant refers the court to the wording of this answer, and respectfully urges that no issue was raised thereby whereby appellant should have been permitted to introduce evi-

dence in the court below. (Idaho Rev. Stats., sec. 4183; *Hensley v. Tartar,* 14 Cal. 508; *Richardson v. Smith,* 29 Cal. 529; *Doll v. Good,* 38 Cal. 287; *Norris v. Glenn,* 1 Idaho, 590; *Swanholm v. Reeser,* 3 Idaho, 476, 31 Pac. 804.) Respondent on the trial repeatedly objected to the introduction of any evidence on behalf of appellant. The main question is as to who appropriated the waters in controversy, and who is entitled to the ownership thereof. The respondent's complaint is full and complete, showing the various steps taken by respondent, required to initiate, actually appropriate, and perfect its title to said waters. The third, fourth, fifth and sixth paragraphs of the complaint are full and complete, covering six and a half pages of the transcript. These paragraphs of the complaint, among other things, set forth the application made to the state engineer for permission to appropriate the waters in controversy; the actual appropriation thereof; the expenditure of $20,000 in the construction of a water system intended to supply water for public purposes, and for public use, and the actual appropriation and use of said waters for that purpose. In order to acquire a water right, it is not sufficient to post and file, or even record, location notices. There must be an intent to take the water and apply it to a beneficial use; but the mere intent is not sufficient. It must be followed by actual prosecution of efforts to make the water available at the point where it is needed. (*Moyer v. Preston,* 6 Wyo. 308, 71 Am. St. Rep. 914, 44 Pac. 845; *Murray v. Tingley,* 20 Mont. 260, 50 Pac. 723; 3 Farnham on Waters and Water Rights, 2058; *Cardoza v. Calkins,* 117 Cal. 106, 48 Pac. 1010; *Mitchell v. Amador Canal etc. Min. Co.,* 75 Cal. 464, 17 Pac. 246.) Lack of means, even, is not a sufficient excuse for delay. (*Cole v. Logan,* 24 Or. 304, 33 Pac. 568.) Mere diversion of the water is not sufficient to perfect the right. There are still other steps to be taken in the application of the water to a beneficial use. (3 Farnham on Waters and Water Rights, 2060, 2061; *Combs v. Agricultural Ditch Co.,* 17 Colo. 146, 31 Am. St. Rep. 275, 28 Pac. 966; *Farmers' etc. Canal Co. v. Southworth,* 13 Colo. 111, 21 Pac. 1028, 4 L. R. A. 767.)

AILSHIE, J.—Prior to hearing this case on its merits, the respondent filed and presented a motion to dismiss the appeal and also a motion to strike from the transcript the appellant's statement on motion for a new trial. We have carefully examined the record and affidavits used on the hearing of these motions and have concluded that both motions should be overruled, and it is so ordered.

This action was commenced by the respondent corporation to restrain the appellant corporation from diverting and appropriating the waters of Sand creek and Switzer creek in Kootenai county, and to restrain and enjoin the defendants from interfering with or diverting the waters of those streams in any way or manner that would interfere with the rights and appropriation of the plaintiff. The case went to trial upon complaint and answer and resulted in a judgment for the plaintiff, from which judgment and an order denying a motion for a new trial, the defendant has appealed. The substance of the trial court's findings of fact is that the plaintiff's grantor was the prior appropriator of the waters of Switzer creek and the west branch of Sand creek, situated in Kootenai county, and that such appropriation dates from September 26, 1903, the date on which respondent's grantor made his application to the state engineer for a permit to divert, appropriate and use the waters of those streams to the extent of twenty cubic feet per second. The court finds that plaintiff and its grantor had performed all the acts and requirements necessary or imposed by the statute for the protection of its appropriation, and had diverted the waters and applied them to a beneficial use in supplying the village of Sand Point and its inhabitants with water for domestic uses and fire purposes. The court also finds that the respondent's appropriation was and is prior to that of the appellant and so ordered and decreed. The appellant contends that the undisputed facts as disclosed by the evidence and appearing upon the record show clearly and beyond question that the court's findings are unsupported by the evidence, and that he should have found that appellant's water right from these streams is prior and su-

perior to the rights of respondent, and that the findings of the court in this respect are wholly unsupported. The facts as they appear from the record upon this point are substantially as follows:

On December 16, 1902, appellant's grantors located a water right on West Sand or Mill creek in Kootenai county, and the location notice thereof was posted and duly filed and recorded in the office of the county recorder of Kootenai county, and thereafter, in due time, was filed in the office of the state engineer at Boise city. Within a few days thereafter the same parties duly and regularly made two additional locations on these streams. On the fourteenth day of January, 1903, and about twenty-nine days after making the first location, work was commenced which consisted in cutting out a trail up the canyon and making a survey for flumes and ditches. Work was continuously prosecuted from that time until the date of the trial of this cause, with at least one man on the ground all the time engaged in building a road, and a flume and ditch through which to carry the waters of these streams, and the general work incident to the construction of the diverting work for carrying out the purposes for which the appropriation was being made. An itemized statement of expenditures made in carrying on this work appears to have been presented upon the trial showing an expenditure of $714 for wages, groceries, tools and supplies, between the fourteenth day of January, 1903, and the first day of September, 1903. It was also shown that an expenditure of more than $1,700 was made on these works between the fourteenth day of January, 1903, and the eighth day of February, 1904. At the time of the trial in this case it appeared that the appellant had built about one mile of road up the canyon for the purpose of reaching the point of diversion on the stream and conveying material and supplies, and had also erected and constructed a flume three thousand four hundred feet in length. None of these facts are directly disputed by the respondent, but at the trial the respondent placed witnesses upon the stand who testified that in passing through this country in the neighbor-

hood of this work they had noticed some work had been done, but the witnesses estimated the value thereof as very small—something like $200 or $300, perhaps. But it does not appear that these witnesses had made very much examination or pretended to have seen all the works or were at all accurate or positive as to their estimates. It remains, nevertheless, a fact, that they admit that work had been done there, and, in fact, one of plaintiff's witnesses was one of the first men employed by the defendant's grantor, and had made the original survey for the defendant's diverting works. The fact stands upon the record practically undisputed, that on the twenty-ninth day of September, 1903, the date on which respondent's grantor obtained his permit from the state engineer to divert and appropriate the waters of these streams, the appellant was actively engaged in the construction of its diverting works, and had at that time expended from $700 to $800 in the prosecution of the work. It should be observed that appellant's location and the prosecution of its work was made under the act of February 25, 1899 (Sess. Laws 1899, p. 380), while the respondent's right was initiated under the act approved March 11, 1903 (Sess. Laws 1903, p. 223). By the latter act a permit is obtained from the state engineer to divert and appropriate the waters of any of the public streams of the state, while under the act of 1899, notice was required to be posted and a copy thereof filed and recorded with the county recorder, and a duplicate thereof filed with the state engineer. By section 6 of the act of 1899, under which appellant initiated its right, it is provided: "Within sixty days after the notice is posted, the claimant must commence the excavation or construction of the works by which he intends to divert the water, and must prosecute the work diligently and uninterruptedly to completion, unless temporarily interrupted by snow, rain or cold weather." Respondent claims that the appellant failed to show that it had prosecuted the construction of its diverting works with the diligence required by section 6, *supra,* and for that reason, if for none other, the judgment was properly entered against

appellant. It seems to us, however, when we consider that this work was being prosecuted in a mountainous section of the state where there is a heavy snowfall and a long winter season, with much rough and stormy weather, which would interrupt and delay the character of work that was being carried on, that the amount and kind of work which is shown to have been done evidences good faith, reasonable diligence and a purpose to complete the work and apply the waters to the beneficial use designated. Saying nothing of the record notice which the respondent had, the work upon the ground and its continued prosecution was ample actual notice to respondent, or any other subsequent claimant to these waters, as to the nature of the claim asserted by appellant. It seems to us that the real difficulty in this case has arisen from a wrong construction and misapplication of the word "appropriate" as used in our statutes. Section 8 of the act of February 25, 1899, provides that where an appropriator has complied with the preceding sections in the posting and recording of notices and the commencement and prosecution of work, "the claimant's right to the use of water relates back to the time the notice was posted." Section 7 of the act provides that by a completion of the work "is meant conducting the waters to the place of intended use." A person desiring to appropriate the waters of a stream may do so either by actually diverting the water and applying it to a beneficial use, or he may pursue the statutory method by posting and recording his notice and commencing and prosecuting his work within the statutory time. (*De Necochea v. Curtis,* 80 Cal. 397, 20 Pac. 563, 22 Pac. 198; *Wells v. Mantes,* 99 Cal. 583, 34 Pac. 324; *Watterson v. Saldunbehere,* 101 Cal. 112, 35 Pac. 432.) In the latter case his appropriation will be entitled to date from the time of posting his notice (Sess. Laws 1899, p. 380, sec. 8; *Wells v. Mantes, supra; Nevada Ditch Co. v. Bennett,* 30 Or. 59, 45 Pac. 472, 60 Am. St. Rep. 777, and note thereto; Works on Irrigation, pp. 44-46; Long on Irrigation, sec. 37), and any intervening locator or claimant of the waters will be treated as subsequent both in time and

right. In such case the appropriation is initiated by the posting of the notice, and an inchoate right thereby arises which may ripen into a legal and complete appropriation upon the final delivery of the waters to the place of intended use. In other words, by pursuing the successive steps prescribed in the statute and completing his diverting works and applying the water to a beneficial purpose, the appropriation is completed. The only difference between an appropriation initiated by posting notice and one initiated by diversion and application of the waters, is that the appropriator who claims under notice is allowed the extra sixty days within which to commence his work and reasonable time thereafter in which to complete the same. It appears that the lower court proceeded on the theory that the appropriation, regardless of the posting of notice, dates from the actual diversion of the water and its application to the use intended, and the court accordingly finds that "the plaintiff did on or before the fourteenth day of August, 1904, complete its water system, and did actually appropriate the waters flowing in the said stream described in the complaint, and has ever since said date actually appropriated and used all the waters in said stream described in the complaint in supplying the inhabitants of the village of Sand Point with water for domestic uses and fire purposes." This theory is incorrect as applied to appellant so long as appellant continued to prosecute its work with reasonable diligence. So long as it did so, it was entitled to have its appropriation relate back to the posting of its notice, and in that event appellant would be entitled to protection as a prior appropriator as against the respondent. Some importance seems to have also been attached to the fact that the appellant was cognizant of the work being done by respondent and the large expenditure being made by it in constructing its diverting works and water system, and that it should have made some demonstration or taken some action sooner to prevent respondent further prosecuting its work. This position, however, is without merit. The appellant was also prosecuting its work at the same time and for a similar purpose, but in the mean-

while neither one was actually diverting the water to the detriment or damage of the other, nor was there any apparent reason why appellant could or should have prevented respondent carrying on its work. There is no contention made in this case but that respondent has a valid water right and appropriation, and would be entitled to whatever of the waters of those streams the appellant fails to use or at any such times as the appellant fails to use and apply those waters. The only difficulty is that upon the undisputed facts of the case, respondent's right is subsequent and subordinate to appellant's right. On the facts as presented by this appeal, the trial court should have found that the defendant, the development company, had a prior and superior right to that of plaintiff, the water and light company, and that defendant had prosecuted the construction of its diverting works with reasonable diligence.

The judgment is reversed and cause remanded, with instructions to the trial court to make findings of fact in accordance with the views herein expressed, and enter judgment in accordance therewith. Costs awarded to appellant.

Stockslager, C. J., and Sullivan, J., concur.