(April 3, 1917.)

PERRY BASINGER, C. M. MULKEY, A. H. WILLIAMS, J. N. WILDE, W. H. BARTELL, Sr., O. P. WILLIAMS and BLAINE COUNTY IRRIGATION COMPANY, LTD., a Corporation, Appellants, v. E. K. TAYLOR, R. L. SUTCLIFFE, Water-master of Little Lost River District, SAMANTHA J. TAYLOR and J. B. TAYLOR, Respondents.

[164 Pac. 522.]

WATER—WATER RIGHTS—APPROPRIATION—BENEFICIAL USE—PERMITS—DOCTRINE OF RELATION.

1.  Under sec. 3 of art. 15 of the constitution, those using water for domestic purposes have a preference over those claiming water for any other use.  But in case the water has already been appropriated for another inferior use, the use for a superior purpose is subject to the provision of law regulating the taking of private property for public use.

2.  A permit issued by the state engineer is not a water right, and is not in itself evidence of appropriation of water.

3.  Under a pleading claiming title to the public waters of this state, a decree must be based upon the amount of water actually diverted and applied to beneficial use.

Argument for Appellants.

4. An appropriator of water who seeks to invoke the doctrine of relation in order that the date of priority. of his appropriation shall relate back to the date of the initiation of his appropriation must show a substantial compliance with all the provisions of the statute, and also final consummation of the appropriation as defined by the statute, and can invoke the doctrine only to the extent of the completion of such appropriation.

5. The holder of a permit issued by the state engineer for the appropriation of water is not entitled to an injunction to prevent the diversion of waters from a stream, unless he shows that he is in a position to make beneficial use of such water.

6. A person entitled to the use of water may change the place of diversion if others are not injured by such change. The right to change the place of diversion is subject to the protection of the rights of other appropriators from the stream.

[As to equitable estoppel as defense to suits to restrain diversion and use of water, see note in **Ann. Cas.** 1914B, 996.]

APPEAL from the District Court of the Sixth Judicial District, for Custer County. Hon. J. M. Stevens, Judge.

Action to quiet title to use of waters. *Reversed.*

Hansbrough & Gagon and Holden & Holden, for Appellants.

Where a large per cent of the waters of a natural stream is lost by seepage and evaporation if permitted to flow in its natural channel, and one person, by the expenditure of money and labor, constructs an artificial water-way and thereby prevents such loss, and delivers to other appropriators upon the stream the amount of water they have been accustomed to receive on their lands, he is entitled to the amount of water so saved. (Wiel on Water Rights, 2d ed., 360; *Wiggins v. Muscupiabe Land & Water Co.,* 113 Cal. 182, 54 Am. St. 337, 45 Pac. 160, 32 L. R. A. 667; *Beaverhead Canal Co. v. Dillon Electric Light & Power Co.,* 34 Mont. 135, 85 Pac. 880; *Raymond v. Wimsette,* 12 Mont. 551, 33 Am. St. 604, 31 Pac. 537.)

The person entitled to the use of water may change the place of diversion, if others are not injured by such change. (Sec. 3247, Rev. Codes; *Hard v. Boise City Irr. etc. Co.,* 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407.)

The right to change the place of diversion includes cases in which the use of the water amounts to its absorption, or is such as to imply notice to subsequent appropriators that such change may be reasonably expected. (*Last Chance Min. Co. v. Bunker Hill & S. Min. etc. Co.*, 49 Fed. 430.)

A right for domestic use and culinary purposes is not preferred to a right for irrigation purposes, except of the same date. (*Union Mill & Mining Co. v. Dangberg*, 81 Fed. 73.)

The first appropriation of water for useful and beneficial purposes gives the prior right thereto, and the right once vested will be protected and upheld unless abandoned. (*Malad Valley Irr. Co. v. Campbell*, 2 Ida. 411, 18 Pac. 52; *Geertson v. Barrack*, 3 Ida. 344, 29 Pac. 42; *Dunniway v. Lawson*, 6 Ida. 28, 51 Pac. 1032; *Hillman v. Hardwick*, 3 Ida. 255, 28 Pac. 438.)

A prior appropriator of water has a right to the use thereof, which is superior to the claim of a riparian proprietor, not based upon appropriation, but on the doctrine of riparian rights. (*Drake v. Earhart*, 2 Ida. 750, 23 Pac. 541.)

The law declares a water right to be real property. (Sec. 3056, Rev. Codes; *Ada County Farmers' Irr. Co. v. Farmers' Canal Co.*, 5 Ida. 793, 51 Pac. 990, 40 L. R. A. 485; *Hall v. Blackman*, 8 Ida. 272, 68 Pac. 19.)

Where a person claims the right to the use of water by user, the right dates from the time the water is applied to the land for the irrigation thereof. (*Sandpoint Water & Light Co. v. Panhandle Development Co.*, 11 Ida. 405, 83 Pac. 347.)

The state engineer has no authority to interfere with vested rights or to grant a permit for the appropriation and diversion of water, when the same has already been appropriated and applied to beneficial use. (*Youngs v. Regan*, 20 Ida. 275, 118 Pac. 499; *Nielson v. Parker*, 19 Ida. 727, 115 Pac. 488.)

Clark & Brodhead, Higgins & Ambrose and Barber & Davison, for Respondents.

The major portion of the loss was because of the negligence of the individual appellants in the construction and main-

tenance of the three miles of ditch across the flat from Dry Creek to Wet Creek. (*Bennett v. Nourse,* 22 Ida. 249, 254, 125 Pac. 1038; *Stickney v. Hanrahan,* 7 Ida. 424, 63 Pac. 189.)

One may change the point of diversion, provided he can so do without injury to others, but a subsequent appropriator has a vested right to insist on the continuance of the conditions at the time he made his appropriations and to have the water continue to flow as it flowed when he made his appropriation. (*Bennett v. Nourse, supra;* Wiel on Water Rights, 3d ed., 302.)

"Preference to those using water for domestic purposes, subject only to the limitations prescribed by law, is granted by the constitution and laws of this state." (Constitution Idaho, sec. 3, art. 15; *Montpelier Mill Co. v. City of Montpelier,* 19 Ida. 212, 113 Pac. 741.)

The claim for water relates back to the date of its first use, and where from year to year the use is extended, the claim to the entire amount relates back to date of first user. (*Brown v. Newell,* 12 Ida. 166, 85 Pac. 385; *Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19.)

There had been a complete five years' user. The court has held that a four years' user made water appurtenant to the land. (*Furey v. Taylor,* 22 Ida. 605, 606, 127 Pac. 676; *City of Pocatello v. Bass,* 15 Ida. 1, 96 Pac. 120.)

"The right of one who actually diverts water and applies it to beneficial use, although he has never applied to the state engineer for a permit or procured a permit, is superior and paramount to any right a subsequent appropriator can procure." (*Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488, and cases cited; *Gard v. Thompson,* 21 Ida. 485, 123 Pac. 497; *Speer v. Stephenson,* 16 Ida. 707, 102 Pac. 365; *Sandpoint Water etc. Co. v. Panhandle Dev. Co.,* 11 Ida. 405, 406, 83 Pac. 347.)

Respondents are entitled as of June, 1908, a date preceding the appellant irrigation company's right by two years. (*McGinness v. Stanfield,* 6 Ida. 372, 376, 55 Pac. 1020.)

Where the evidence is conflicting as to the facts, and there is substantial evidence as to the findings of fact by the trial court, findings and decree entered will not be reversed. (*Brinton v. Steele,* 23 Ida. 615, 131 Pac. 662.)

RICE, J.—This action was instituted to quiet title to the waters of Dry Creek, in Custer county, and to restrain the defendant Sutcliffe, as water-master, from interfering with the rights of plaintiffs below, appellants here. All of the appellants, except the Blaine County Irrigation Company, were farmers who had used water from said creek for many years for the irrigation of their lands. They had diverted their water from said Dry Creek, across low land and gravel-bars, through a ditch known as "Farmers' Ditch," and discharged the same into Wet Creek at a point about a mile and a half distant from the place of diversion.

On July 6, 1907, the district court decreed these farmers to be entitled to the use of 22 second-feet of the waters of Dry Creek. About June 1, 1908, respondent Taylor located on Dry Creek and began to prepare his lands for cultivation. The same summer he constructed a ditch leading out of Dry Creek a short distance above the Farmers' Ditch. On October 29, 1910, appellant Blaine County Irrigation Company made application for and received permit from the state engineer for 150 second-feet of the water from Dry Creek. This company began the construction of a pipe-line to divert water from the creek about seven miles above respondent's point of diversion. In July, 1912, the pipe-line was completed and water diverted from Dry Creek into Corral Creek, a tributary of Wet Creek.

At this time the appellants who had used the Farmers' Ditch, by agreement with the Blaine County Irrigation Company, changed their point of diversion to the intake of the pipe-line. By the terms of the agreement their water was thereafter to be diverted through the pipe-line, and thence, by way of Corral Creek and Wet Creek, to the place into which their water had formerly been discharged.

The trial court in its decree adjudged that all appellants, except the Blaine County Irrigation Company, were entitled in common to 22 second-feet of the waters of Dry Creek, subject only to the right of the respondents E. K. Taylor, Samantha J. Taylor and J. B. Taylor, to water for domestic use, and that such respondents were entitled at all times to have delivered at their point of diversion sufficient water from Dry Creek for domestic uses and culinary purposes, and to have flow in the natural channel of said stream a sufficient quantity of said waters to furnish the same at their point of diversion in good, healthy and normal state.

It is admitted that in point of time, the right of all appellants, excepting the Blaine County Irrigation Company, is superior to any right the respondents may have for domestic and culinary purposes, and that their right by reason of the application of the water to a beneficial use, and the decree of the district court, has become a vested right. It is clear that under the constitution those using water for domestic purposes have the preference over those claiming for any other purpose, but the usage for such superior purpose is subject to the provisions of sec. 14 of art. 1 of the constitution, regulating the taking of private property for public use.

In the case of *Montpelier Milling Co. v. City of Montpelier,* 19 Ida. 212, at p. 219, 113 Pac. 741, 743, the court said:

"It clearly was the intention of the framers of the constitution to provide that water previously appropriated for manufacturing purposes may be taken and appropriated for domestic use, upon due and fair compensation therefor. It certainly could not have been the intention of the framers of the constitution to provide that water appropriated for manufacturing purposes could thereafter arbitrarily and without compensation be appropriated for domestic purposes. This would manifestly be unjust, and clearly in contravention of the provisions of this section, which declare that the right to divert and appropriate the unappropriated waters of any natural stream for beneficial use shall never be denied, and that priority of appropriation shall give the better right."

The decree of the trial court in this case, if allowed to take effect, may operate to deprive appellant water users of their property, without compensation, to the extent that they may be deprived at certain seasons of the year of the amount of water necessary for the domestic use of respondents. We think the decree, in that respect, is in contravention of sec. 3 of art. 15, and sec. 14 of art. 1 of the constitution. (*Montpelier Milling Co. v. City of Montpelier, supra; Town of Sterling v. Pawnee Ditch etc. Co.,* 42 Colo. 421, 94 Pac. 339, 15 L. R. A., N. S., 238.)

Respondents, however, contend that they have shown an adverse use to the waters of Dry Creek for domestic purposes for a period in excess of five years. We think the evidence fails to show an adverse appropriation by respondents for domestic purposes, and respondents could not claim as riparian proprietors. (*Drake v. Earhart,* 2 Ida. 750, 23 Pac. 541; *Hutchinson v. Watson S. Ditch Co.,* 16 Ida. 484, 133 Am. St. 125, 101 Pac. 1059.)

This is not a proceeding to condemn the property of appellant water users and subject the same to a higher and more beneficial use, but an action to quiet title. The trial court therefore erred in its first and second conclusions of law, to the effect that respondents were entitled at all times to have delivered at their point of diversion sufficient water for domestic uses and culinary purposes, and the decree based thereon is erroneous.

Respondent E. K. Taylor was made party defendant in the original action, and respondents Samantha J. Taylor and J. B. Taylor intervened in the action. By their cross-complaints each respondent alleges title to 6.4 second-feet of the waters of Dry Creek, diverted at or near the center of sec. 15, tp. 10 N., R. 25 E., B. M., which said waters were first diverted from said creek on June 1, 1908, and conducted by means of irrigation works to and used upon certain described lands.

The intervenors did not allege any privity of title or estate between themselves and defendant E. K. Taylor. Each respondent alleges that he has been gradually increasing his

irrigation works from year to year since June 1, 1908, until the beginning of the irrigation season of 1913, at which time he was diverting and using upon his said lands a certain amount of water. To sustain his title respondent E. K. Taylor introduced in evidence Permit No. 2929, issued by the state engineer on application of L. L. Folsom, dated April 11, 1907, and certificate of the state engineer, dated Nov. 8, 1913, to the effect that E. K. Taylor, holder of Permit No. 2929, had fully complied with the provisions of the laws of the state of Idaho relating to the completion of the works of diversion set out and described in said permit, and that the said works were adequate for diverting and conveying to the place of intended use 15 second-feet of the waters of said Dry Creek. Respondents Samantha J. Taylor and J. B. Taylor neither by allegation or proof show any interest in such permit.

The briefs on file in this case devote much space to a discussion of respondent's title to Permit No. 2929. It appears from the exhibits in the case that L. L. Folsom conveyed Permit No. 2929 to the Custer County Land & Irrigation Company, by deed dated Feb. 18, 1908. The Custer County Land & Irrigation Company, in September, 1908, conveyed the said permit to Ben E. Hervey. In March, 1909, Ben E. Hervey conveyed to the Spokane-Idaho Irrigation & Power Company, Ltd., Permits Nos. 3924, 2929 and 4092, issued by the state engineer of the state of Idaho, with other property, "saving and excepting a sufficient quantity of said water and water rights to irrigate 1,920 acres of land, heretofore expressly reserved and granted unto E. K. Taylor." Defendant Taylor testified that prior to settling upon the lands occupied by him, to which he diverted the waters of Dry Creek, that he had had an agreement with L. L. Folsom, or the Custer County Land & Irrigation Company, as a result of which a deed had been executed to him of Permit No. 2929 and placed in escrow in a bank at Boise, Idaho; that he had made the payments called for by the terms of the escrow agreement, and had arranged to convey his rights to Hervey, with the reservation of sufficient water for his own needs; that upon calling upon the escrow holder for the delivery of the deeds the same

could not be found, and thereupon, by mutual agreement, the Custer County Land & Irrigation Company conveyed direct to Hervey and Hervey conveyed to the Spokane Company with the reservation set out above.

Admitting the facts to be as above outlined, they fail to show any conveyance of title to respondent E. K. Taylor. The statement reserving a "sufficient quantity of said water and water rights to irrigate 1,920 acres of land, heretofore expressly reserved and granted unto E. K. Taylor," is merely descriptive of the reservation and is not a grant to Taylor, The appellants not being parties to any of the above enumerated conveyances are not affected by the reservation.

Without reference to the question of title, however, respondent Taylor could not rely upon Permit No. 2929 in this case. The issue presented by his cross-complaint is ownership of a water right, and on this issue the holding of a permit from the state engineer, in and of itself, has no probative force. A permit from the state engineer is not a water right, and this court has held that it is not an appropriation of the public waters of the state and is not real property. (*Speer v. Stephenson,* 16 Ida. 707, p. 716, 102 Pac. 365; *Ada County Farmers' Irr. Co. v. Farmers' Canal Co.,* 5 Ida. 793, 51 Pac. 990, 40 L. R. A. 485.) A permit merely expresses the consent of the state that the holder may acquire a water right, and if the holder of the permit substantially complies with all the requirements of the statute, to and including the actual application of the water to the beneficial use specified in the application for the permit, he may become the owner of a water right, the priority of which will relate back to the date of the permit; but until all the requirements have been complied with, including the actual application of the water, the holder of the permit has nothing but an inchoate right. Proof of ownership of a permit will not sustain a decree founded upon a pleading alleging ownership of water. After the holder of a permit has fulfilled all the requirements of the statute, and made proof to the state engineer that he has put the water to beneficial use for which the diversion was intended, he is entitled to a license from the state engineer confirming such use.

(Sec. 3261, Rev. Codes.) Under the provisions of sec. 3262, such license is *prima facie* evidence of a water right, but no certificate issued by the state engineer prior to the issuance of such license is made *prima facie* evidence of a water right.

In the case of *Washington State Sugar Co. v. Goodrich,* 27 Ida. 26, at p. 38, 147 Pac. 1073, 1077, this court said: "The granting by the state engineer of a permit for the right to use of water of this state, in and of itself secures to the applicant no right to the use of the waters applied for in said permit, unless there be a substantial compliance with each and every provision of the statute relating to or in any manner affecting the issuance of such permit, and a fulfilment of the conditions and limitations therein, but a compliance with the conditions and limitations prescribed in such permit initiates a right to the use of the water in the applicant, and said right then becomes a vested one and dates back to the issuance of said permit."

By granting respondents a decree to 15 second-feet of water, dating from April 11, 1907, the court seems to have been of the opinion that respondents were entitled to the benefit of the doctrine of relation, and that their right for the full amount of water which their works were capable of diverting would date from the time of the application for the permit. We do not think that the respondents in this case were entitled to the benefit of the doctrine of relation. The first statute passed in Idaho Territory relating to water rights was enacted Feb. 10, 1881. This was followed by the act of Feb. 25, 1899. From the time of the passage of the act of Feb. 10, 1881, to the act of March 11, 1903, there was in force in Idaho a statute requiring notice to be posted and recorded by those who desire to initiate a claim for water or water rights, and requiring diligence on the part of the claimants in order that the doctrine of relation might be invoked for their benefit. Both the acts of 1881 and 1899 provided that by completion of works was meant the conducting of water to the place of intended use, and they further provided that by compliance with the rules prescribed in the statutes the claimant's right to use the water would relate back to the time the notice

was posted. Both acts also provided that failure to comply
with such rules deprived the claimants of the right to the use
of the water as against a subsequent claimant who complied
therewith, with a single exception, namely, that all ditches,
canals or other works which had been made and constructed
prior to the passage of the acts, by means of which the water
of any stream had been diverted and applied to a beneficial
use, must be taken to have secured the right to the water
claimed to the extent of the quantity which said works were
capable of conducting and not exceeding the quantity claimed,
without regard to or compliance with the requirements of the
statute.

In the face of these statutes no one was entitled to invoke
the doctrine of relation who failed to comply with the require-
ments of the statute, with the exception above stated. (2 Kin-
ney on Irrigation & Water Rights, p. 1299; *Pyke v. Burnside,*
8 Ida. 487, 69 Pac. 477; *Crane Falls Power & Irrigation Co.
v. Snake River Irrigation Co.,* 24 Ida. 63, 133 Pac. 655.) The
act of 1903 prescribed certain limitations in the matter of dili-
gence in the prosecution of the work and provided that appli-
cation to a beneficial use was necessary to complete the appro-
priation of public waters of the state. The doctrine of relation
cannot be invoked by a person alleging title to a water right,
and asking that his title be quieted, until the final consumma-
tion of the appropriation as defined by statute, and can be
invoked only to the extent of the completion of the appro-
priation. (2 Kinney on Irrigation & Water Rights, p. 1290;
*Bennett v. Nourse,* 22 Ida. 249, 125 Pac. 1038; *Cole v. Logan,*
24 Or. 304, 33 Pac. 568.) Under the acts of 1881 and 1899,
the appropriation was completed upon the completion of the
irrigation works and conducting of the water through the
same to the point of intended use, and to the extent of the
carrying capacity of the works, subject, however, to its being
lost by failure to apply the water to a beneficial use within a
reasonable time. Under the law of 1903, no appropriation
is complete until the water has been applied to a beneficial use,
and it follows that no appropriation can exceed the amount of
water so applied.

It is clear that under the cross-complaints in this action any decree to the respondents must be based upon the amount of water actually diverted and applied to a beneficial use. (*Pyke v. Burnside, supra.*) It seems that no objection was offered to the action of the court in grouping the rights of all respondents and so decreeing the water. There was testimony to the effect that at the time of the commencement of the suit, or at least at the time of the diversion of water by appellant company, respondents had under cultivation 240 acres of land, and 60 acres additional ready for cultivation. There was some testimony to the effect that an inch of water per acre was necessary to the proper irrigation of such land. Under the most favorable view of the evidence, respondent could not be entitled to a decree for more than six second-feet. The decree awarding respondent E. K. Taylor, and intervenors Samantha J. Taylor and J. B. Taylor, 15 second-feet of the waters of Dry Creek, with date of priority as of April 11, 1907, is erroneous and not sustained by the evidence.

The appellant Blaine County Irrigation Company sets out the permit of the state engineer under which it is operating. Appellant claims that by diverting the waters of Dry Creek at the point of intake of its pipe-line, a great saving of water is made; that between the intake of the pipe-line and the outlet of the Farmers' Ditch, where it formerly emptied into Wet Creek, there was a loss of about sixty per cent of the water flowing down Dry Creek and through the Farmers' Ditch, and that having effected this saving they were entitled to the same. The evidence showed that more than fifty per cent of the loss occurred in the Farmers' Ditch and about ten per cent in the creek itself. It appears that the farmers taking water through the Farmers' Ditch had their water measured to them at a point near where it was discharged from the ditch into Wet Creek. The decree of the court in 1907 did not designate the point at which their water should be measured. This court has held that water appropriated for irrigation purposes must be measured to the claimant at the point of diversion. (*Stickney v. Hanrahan,* 7 Ida. 424, 63 Pac. 189; *Bennett v. Nourse, supra.*) It may be that the decree of 22

second-feet of water to the farmers is not a final limitation of their rights to 22 second-feet at the point of diversion from Dry Creek, but in the absence of a modification of that decree we do not think the court would be justified in holding that they would be entitled to divert more than 22 second-feet. Moreover, appellant company has not shown itself in position to insist on this point. The evidence fails to show that the appellant company has made a beneficial use of this water, or is in a position to do so, the evidence merely showing that this company has diverted water from Dry Creek. In order for appellant company to maintain its action for an injunction under its permit, it must not only show a substantial compliance with all the requirements of the statute, but also that it is in a position to apply the water it diverts to a beneficial use. (*Sandpoint Water etc. Co. v. Panhandle Dev. Co.,* 11 Ida. 405, 83 Pac. 347.)

The question of the rights of the respondents and appellant irrigation company, under their respective permits, in case title thereto is shown is not before the court under the pleadings in this case. Under proper allegations, actions may be instituted for the protection of rights initiated by permits.

In this action appellants also ask that the right of those taking water through the Farmers' Ditch to change their point of diversion be confirmed. Under the statute their point of diversion may be changed, provided such change causes no injury to any other appropriator of water. Respondents are the only parties who could claim to be injured in this case. Their rights must be determined in this action, and when so determined must be protected. A sufficient amount of water must be permitted to flow down the creek to the point of diversion of respondents to satisfy their rights according to their respective priorities. Subject to rights of respondents, the appellants are entitled to change their point of diversion.

The decree of the trial court must be reversed and a new trial ordered. No costs awarded on this appeal.

Morgan, J., concurs.

BUDGE, C. J., Dissenting.—I am unable to concur in that portion of the opinion which holds that under the evidence, respondent, E. K. Taylor, has not shown any right to operate under permit No. 2929. No one claiming under this permit has disputed Taylor's right thereunder, and the undisputed testimony of Taylor is to the effect that he purchased rights under this permit; that the deed conveying the same was made out and placed in escrow, to be delivered upon the completion of Taylor's payment therefor, to his grantor; that he completed all the payments, but that upon demanding the deed in escrow it could not be found, and that by mutual agreement the rights which Taylor had purchased from his grantor were conveyed directly from Taylor's grantor to Taylor's grantee, reserving therefrom certain rights to Taylor under the permit. Taylor's evidence is corroborated by the transfer from Ben E. Hervey to the Spokane Irrigation & Power Company, Limited, "saving and excepting a sufficient quantity of said water and water rights to irrigate 1,920 acres of land heretofore expressly reserved and granted unto E. K. Taylor." While it is true that this language is merely descriptive of the reservation and does not constitute a grant to Taylor, it is evidence clearly corroborating Taylor's statement that a grant had theretofore been made to Taylor.

This entire action is equitable in its nature, and it is one of the fundamental maxims of equity that equity regards that as done which ought to be done. (1 Pom. Eq. Jur., 3d ed., secs. 363–377, inclusive, and numerous cases there cited.) The facts and circumstances in evidence touching Taylor's right under Permit No. 2929 lead to but one conclusion, that is, that E. K. Taylor ought to have been granted a right to operate under Permit No. 2929, and in equity this right is as complete as though the grant were actually made in form. All persons claiming under Permit No. 2929 concede Taylor's interest and rights thereunder. No one else has a right to complain, and his rights under the permit can only be questioned for noncompliance with the law thereunder, and while it is true that the lands described in Permit No. 2929 cover only a portion of the Taylor lands, the certificate of completion

of the works issued by the state engineer to Taylor clearly
describes all of the lands of the Taylors.   The fact that all of
the Taylors' lands were not clearly described in the permit,
or, in other words, the fact that they actually applied the
water to lands different than those described in the permit
would be immaterial.   (*Mahoney v. Neiswanger*, 6 Ida. 750,
59 Pac. 561.)   Under the statute the state engineer has au-
thority to grant a certificate of completion of works for lands
different from those described in the permit.   The state en-
gineer is a public officer, and the presumption is that his acts,
within the line of his duties, are regular, and in the absence
of any showing that the permit had been amended, the pre-
sumption is that all of the regular steps have been complied
with.

Nor is it correct to say that the permit in and of itself has
no probative force.   True, a permit is not a water right, but
it does give any lawful holder of the permit, or an interest
thereunder, the right to proceed with reasonable diligence and
in compliance with the statute to mature the water right.   To
hold that a permit has no probative force would be tantamount,
when pursued to its logical result, to holding that a person
could get no rights under the statute which any appropriator
would be bound to respect until the holder of the permit was
in position to show that he had fully complied with the law
in every respect and completed his appropriation by applying
it to a beneficial use.   (*Sandpoint Water etc. Co. v. Pan-
handle Dev. Co.*, 11 Ida. 405, 83 Pac. 347 ; *Speer v. Stephenson*,
16 Ida. 707–716, 102 Pac. 365; *Washington State Sugar Co.
v. Goodrich*, 27 Ida. 26, 147 Pac. 1073.)

The evidence touching the rights of the Taylors and their
use of water and the relation existing between E. K. Taylor on
the one hand and Samantha J. and J. B. Taylor on the other
hand, and the pleadings in this respect appear to be incom-
plete.   The pleadings should be amended to promote the ends
of justice in this case in order that the trial court may receive
evidence in support of their respective claims and award a
judgment in proper form, which would adequately protect the
rights of the parties under the law and the facts.

Independently of the discussion touching Taylor's rights under Permit No. 2929, I am of the opinion, under the facts of this case, that the appropriation of the Taylors should be found to be complete to the right to the use of all of the unappropriated water flowing in Dry Creek, to the capacity of their ditch, not theretofore appropriated by the individual plaintiffs, for the reason that the evidence conclusively shows that the Taylors had constructed their ditch of sufficient size and capacity to carry all of the unappropriated water, and had actually diverted the same and delivered it to the point of intended use, some time during the season of 1908, and a long time prior to the date of the permit held by the Blaine County Irrigation Company. And I think the evidence bears out the statement that the Blaine County Irrigation Company intended to secure its supply of water from flood waters, to be by it conserved in a reservoir for sale and distribution. The completion of the ditch by the Taylors and the diverting of the water to the point of intended use vested in them a property right in the use of the water, which could only be divested by condemnation for a higher use or lost by abandonment. To permit them to be deprived of such a vested property right in any other manner would clearly violate the constitution and laws of this state.

It is not necessary for an appropriator to follow the procedure provided by statute in order to acquire a valid water right which will be good as against all subsequent appropriators. One who actually diverts and appropriates water to a beneficial use or appropriates and diverts water to the point of intended use and thereafter, with reasonable diligence, applies such water to a beneficial use, acquires as good a right thereto as one who appropriates under the provisions of the statute. (*Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Brown v. Newell,* 12 Ida. 166, 85 Pac. 385; *Lockwood v. Freeman,* 15 Ida. 395, 98 Pac. 295; *Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488.)

In the latter case the court said: "It has never been the intention, so far as we are advised, of the legislature to cut off the right an appropriator and user of water may acquire

by the actual diversion of the water and its application to a beneficial use. This constitutes actual notice to every intending appropriator of the water of such a stream. It is like a man being actually in possession of realty; indeed, a water right is realty in this state (sec. 3656, Rev. Codes; *Ada County Farmers' Irr. Co. v. Farmers Canal Co.*, 5 Ida. 793, 51 Pac. 990, 40 L. R. A. 485; *McGinness v. Stanfield*, 6 Ida. 372, 55 Pac. 1020), . . . . but if he should actually divert the water and apply it to a beneficial use before the rights or interest of any other person intervenes, he would be entitled to the protection of the law in the use and enjoyment of the right thus acquired. He would then be in actual possession of the property to the extent of the diversion and use, and to that extent would need no protection from a constructive notice which a compliance with the statute affords.''

It is clear, then, that there are two distinct methods by which one may acquire a water right; first, by actual appropriation; second, by compliance with the statute. The difficulty seems to arise in determining just how or in what manner and to what extent, in a given case, the rights of one claiming by actual appropriation have accrued and will be protected. In this case the Taylors went into possession of their land in the spring of 1908; during that season they completed the construction of their ditch, or canal, and actually diverted the water and carried it to the point of intended use, and the evidence shows that they proceeded, with due diligence, to clear their land, to cultivate it and to apply the water to a beneficial use thereon.

If I understand the majority opinion, it restricts the doctrine of relation to the extent of a compliance with the statute, which would be correct if the statutory method were the only method whereby water could be appropriated. But there is another doctrine, well settled in this state and other jurisdictions where the same question has arisen, which is adequate to fully protect the rights of the Taylors in all of the water which they claim, and this is the well-known doctrine of appropriation for future needs. (Wiel on Water Rights, 3d ed., vol. 1, sec. 396, and secs. 483, 484.) This author says,

in sec. 483: "But while in mining a fixed amount may usually be sufficient from the start for all purposes, in irrigation of newly settled land it will not. The need for water grows as the area cultivated grows. The settler can cultivate, perhaps, only a few acres the first year; but he does everything with a view to later expansion. As is said in one case, it is reasonable to suppose that reclamation of the entire area owned at the time of diversion is contemplated. (Citing *Seaweard v. Pacific Livestock Co.,* 49 Or. 157, 88 Pac. 963.) Before his larger acreage is cleared and planted, however (which may take several years), other claimants to the use of the water have arrived. Does the law allow the former to continue increasing his use in the face of these later claimants?

"It seems well settled that such is the rule . . . . The essence of the rule is that the design may be carried out in spite of an intervening appropriator elsewhere on the stream, as the quotations below show."

In support of this doctrine the author cites cases from Colorado, Idaho, Montana, Nevada, Oregon, Utah, Washington and California. The only limitations upon the rule are that the future needed amount must have been originally claimed at the time of initiating the appropriation, the future needs must have been in mind, the enlarged use must have been a part of an original policy of expansion, use on the land in question must have been contemplated at the time of the original appropriation, the future enlargement cannot exceed the original capacity of the ditch, the amount actually diverted can be held without using no longer than is reasonable under the circumstances of each case, and the right may be lost by abandonment. What is a reasonable time is a question of fact in each case and depends upon the magnitude of the undertaking and the natural obstacles to be encountered in execution of the design. Sec. 484, *supra,* containing illustrations from numerous authorities there cited.

This court clearly and without ambiguity adopted the above rule in this state in *Conant v. Jones, supra.* Under the circumstances in this case I feel justified in quoting at length

from the opinion in *Conant v. Jones,* that portion which is particularly in point, as follows:

"It is contended that respondent .has not used, or put to a beneficial use all of the water of said creek, and for that reason he has forfeited his right to all of the water not used for the purpose intended. It is true that the evidence fails to show that respondent has utilized the entire amount of water diverted. There is no question but what respondent had the right to appropriate, of unappropriated water, sufficient, not only for the present, but also for the future needs of his land, when he shall get it into cultivation.

"The question arises as to the diligence to be exercised in the application of the water to the intended use. Section 3161 of the Revised Statutes of 1887 declares the diligence necessary to be exercised in conducting water to the point of intended use after the location of the same; but the law is silent as to the diligence to be exercised in making application of the water appropriated.

"The appropriator would no doubt be entitled to a reasonable time in which to get his land in cultivation and to make such application. If that be true, it follows that what constitutes reasonable time is a question of fact dependent upon the circumstances of each particular case. No inflexible rule should be made to decide what constitutes a reasonable time in this matter. We are of the opinion that a person who complies with the law as to locating and conducting the water to the point of intended use has such time as he may need, or require, using ordinary diligence in getting his land into cultivation, to make application of such water to the intended use, such time at least, as is reasonable under all of the circumstances.

"Poor men as a rule have settled upon the arid lands of this state and taken them under the laws of Congress, many of them under the homestead law, and are able to clear but a small portion of such lands of sagebrush, from year to year, and put it in condition for raising a crop, and it will take years for many of them to prepare their entire farms for cultivation and to make application of the water appropriated

thereto. A decision that would defeat persons acting in good faith and using reasonable diligence from securing the full benefit of the water appropriated would be most unjust and inequitable. In the meantime, however, he is only entitled to such water from year to year as he puts to a beneficial use. A person may add from year to year acreage to his cultivated land, and increase his application of water thereto for irrigation as his necessities may demand, as his abilities permit, until he has put to a beneficial use the entire amount of water at first diverted by him and conducted to the point of intended use.''

The rule there laid down has been followed by this court in *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Brown v. Newell, supra.* It should be noted in connection with the latter case that it was decided in 1906, three years after the adoption of the statute providing for the issuance of permits and the ultimate maturing of water rights thereunder by complying with the statutory provisions. The facts in that case are substantially parallel with the facts in the case at bar, so far as they describe the acts and intention of the Taylors. The court says, in its opinion:

''It is contended by appellant that the acts of diversion and appropriation done by Horton in 1899 did not amount to an actual appropriation. It clearly appears from the evidence that the ditch was opened in the fall of 1899, and the head-gate was put in and the water, to the amount of 200 inches, was actually delivered on the Horton claim. These acts were followed up the next year by extending the ditch so as to more completely distribute the water over the entire claim, and this in turn was followed by cultivation of a larger acreage of the claim. We think the facts bring this case within the well-established rules of law both as to what constitutes an appropriation as well as the reasonable time in which an appropriator may apply the water to the intended use. (*Conant v. Jones,* 3 Ida. 606, 32 Pac. 250; *Pyke v. Burnside,* 8 Ida. 487, 69 Pac. 477; *Sandpoint Water & Light Co. v. Panhandle Dev. Co.,* 11 Ida. 405, 83 Pac. 347.)

" . . . . It is unnecessary for us to consider the validity of the water right notice and claim posted by Horton on March 28, 1900, or of the subsequent steps taken by him under that notice in his endeavor to comply with the law. The actual diversion and application of the water had preceded that date, and it therefore becomes unnecessary for us to consider the steps taken in regard to the posting and recording the notice and the prosecution of work thereafter."

The facts in the present case are sufficient to indicate the amount of land settled and occupied by the Taylors, which, from the evidence, it clearly appears they intended to reclaim and irrigate by the application of water, which was actually appropriated and diverted to the point of intended use sometime during the season of 1908. The evidence shows that the ditch was designed to carry the water from their point of diversion to and upon their lands, and that it was completed that season, and that its capacity was adequate to carry water sufficient for the irrigation of all of the lands in question. The evidence further shows that the Taylors have proceeded with reasonable diligence in the application of this water upon their land to a beneficial use in the reclamation thereof. Of all of these facts the Blaine County Irrigation Company had actual notice at the time it secured its permit from the state engineer in October, 1910.

All of the facts and circumstances in evidence clearly show that the Taylors have brought themselves well within the rule governing appropriation for future needs. To hold otherwise would amount to overruling a long line of harmonious decisions governing such property rights in this state and would abrogate a rule of law which is well settled in all of the arid states.

For the reasons herein expressed I am unable to concur in the majority opinion upon this phase of the case.