(December 30, 1922.)

PERRY BASINGER, C. M. MULKEY, A. H. WILLIAMS, J. N. WILDE, W. H. BARTELL, Sr., O. P. WILL-IAMS and BLAINE COUNTY IRRIGATION COMPANY, LTD., a Corporation, Appellants, v. E. K. TAYLOR, R. L. SUTCLIFFE, Watermaster of Little Lost River District, and SAMANTHA J. TAYLOR and J. B. TAYLOR, Respondents.

[211 Pac. 1085.]

IRRIGATION—CHANGE OF POINT OF DIVERSION—AVOIDANCE OF INJURY TO OTHERS—CONSERVATION OF WATER—RIGHT GAINED BY—UNREASONABLE DITCH LOSSES—WATER LICENSE.

1.  Such conditions must be imposed upon a water user who seeks to exercise the right to change his point of diversion as will prevent injury to other appropriators.

2.  One who, by constructing artificial works, prevents the loss of water flowing in a stream, and augments the amount of water available from it, has the, right to use the water so conserved. (Rule announced in *Reno v. Richards,* 32 Ida. 1, 178 Pac. 81, approved.)

3.  One diverting water from a stream must so construct his ditch as to prevent unreasonable loss.

4.  In order to obtain a valid license to use water for irrigation, as distinguished from a right based entirely upon actual user, one must substantially comply with the statutes relating to such licenses.

APPEAL from the District Court of the Sixth Judicial District, for Butte County. Hon. F. J. Cowen, Judge.

Action to establish priorities to use of water for irrigation. Judgment modified.

Peterson & Coffin, for Appellants.

The court erred in failing to make a finding on the issue of whether the appellant company had effected a saving of water by the construction of the pipe-line and in failing

to award the appellant company a prior right to the 33 second-feet of water shown by the evidence to have been saved by it. (C. S., secs. 6866, 6867; *Carson v. Thews,* 2 Ida. 176, 9 Pac. 605; *First Nat. Bank of Lewiston v. Williams,* 2 Ida. 670, 23 Pac. 552; *Standley v. Flint,* 10 Ida. 629, 79 Pac. 815; *Wood v. Broderson,* 12 Ida. 190, 80 Pac. 490; *Reno v. Richards,* 32 Ida. 1, 178 Pac. 81.)

A party who saves a portion of the waters of a natural stream by artificial means, such as the construction of a pipe-line, thereby acquires a prior and paramount right to the use of the waters so saved, as against all other appropriations from the stream. (1 Wiel on Water Rights, 3d. ed., sec. 38a, p. 41; *Pomona Land & Water Co. v. San Antonio Co.,* 152 Cal. 618, 93 Pac. 881; *Wiggins v. Muscupiabe Land & Water Co.,* 113 Cal. 182, 45 Pac. 160; *Beaverhead Canal Co. v. Dillon,* 34 Mont. 135, 85 Pac. 880; *Fuller v. Sharp,* 33 Utah, 431, 94 Pac. 813; *Smith v. Duff,* 39 Mont. 382, 102 Pac. 984; *Reno v. Richards, supra.*)

The individual plaintiffs were bound to use only due care, under all the circumstances, to prevent loss of water by seepage from the ditch constructed by them in 1891 and used to convey water to their lands until the construction of the pipe-line by the plaintiff, Blaine County Irrigation Company, Ltd., in the year 1912. (*Burrows v. Fox,* 98 Cal. 63, 32 Pac. 811; *Sterling v. Pawnee Ditch Co.,* 42 Colo. 421, 94 Pac. 339, 15 L. R. A., N. S., 239; *Joseph Milling Co. v. Joseph,* 74 Or. 296, 144 Pac. 465.)

If the statutory method of appropriation is adopted, a complete compliance with the statutory provisions is necessary in order to invoke any right whatever under the application for permit. This question was considered on the former appeal, the decision in which has become the law of the case. (*Duckworth v. Watsonville Water & Light Co.,* 158 Cal. 206, 110 Pac. 927; *Bailey v. Tintinger,* 45 Mont. 154, 122 Pac. 575; *Washington State Sugar Co. v. Goodrich,* 22 Ida. 38, 147 Pac. 1073.)

Barber & Barber, W. A. Brodhead and Chase A. Clark, for Respondents.

The actual appropriation, though not preceded by the posting or recording of any notice, is valid as against subsequent appropriators thereof. (*Wells v. Mantes,* 99 Cal. 583, 34 Pac. 324; *Waterson v. Saldunbehere,* 101 Cal. 107, 35 Pac. 432; *Hargrave v. Cook,* 108 Cal. 72, 41 Pac. 18; *Wells v. Kreyenhagen,* 117 Cal. 329, 49 Pac. 128; *Union etc. v. Dangberg,* 81 Fed. 73; *Murray v. Tingley,* 20 Mont. 260, 50 Pac. 723.)

The appellant is absolutely without right to change the point of diversion of any of the waters of Dry Creek when such a step would be to the injury of respondents' prior right. (*Hall v. Blackman,* 22 Ida. 556, 126 Pac. 1045; *Bennett v. Nourse,* 22 Ida. 249, 125 Pac. 1038; *Joyce v. Rubin,* 23 Ida. 296, 130 Pac. 793; Wiel on Water Rights, 3d ed., 302.)

It stands the water user in hand to construct his ditch so there will be the least possible waste of water, and by either piping or cementing portions of the ditch where the greatest waste occurs he can save much of his water. (*Bennett v. Nourse, supra; Stickney v. Hanrahan,* 7 Ida. 424, 63 Pac. 189.)

"The theory of the law is that the public waters of this state shall be subjected to the highest and greatest duty. (*Van Camp v. Emery,* 13 Ida. 202, 89 Pac. 752; *Niday v. Barker,* 16 Ida. 73, 101 Pac. 254; *State v. Twin Falls etc. Co.,* 21 Ida. 410, 121 Pac. 1039; *Farmers' etc. v. Riverside etc.,* 16 Ida. 525, 102 Pac. 841.)

The only right obtained by the appellant company would be a prior right to divert and appropriate such water as it actually saved to the stream; the reward for its labor being not the water, but the first right to make a regular appropriation thereof, a vested right to which it could obtain only under the statutory procedure, or by five years adverse use. (*Rabido v. Furey,* 33 Ida. 56, 190 Pac. 73; *Reno v. Richards,* 32 Ida. 10, 178 Pac. 81; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Lee v. Hanford,* 21 Ida. 327, 121 Pac. 558.)

In no event could the company maintain the priority of a right vested by conservation, or otherwise, over a previously vested right in the stream. Priority of time as between different appropriators is ever recognized as determinative of relative rights. (C. S. 5561; *Brose v. Board of Directors, etc.*, 20 Ida. 281, 118 Pac. 504; *Cottonwood etc. Co. v. St. Michaels Monastery*, 29 Ida. 761, 162 Pac. 242; *Beaverhead Canal Co. v. Dillon*, 34 Mont. 135, 85 Pac. 880.)

The lack of a finding as to saving is immaterial, as no right could be predicated thereon. (*Storey & Fawcett v. Nampa, etc.*, 32 Ida. 713, 187 Pac. 946; *Berlin M. Works v. Dehlbom*, 29 Ida. 494, 160 Pac. 746; *Tage v. Alberts*, 2 Ida. 271, 13 Pac. 19; *Wood v. Broderson*, 12 Ida. 198, 85 Pac. 490.)

McCARTHY, J.—This is an action to quiet title to the waters of Dry Creek, a stream in Butte county, to restrain the watermaster of the Little Lost River district from interfering with appellants' rights, to establish the rights of the individual appellants to change their point of diversion on Dry Creek to the intake of the pipe-line of the corporate appellant, and to quiet title in the said corporate appellant to the use of 33 second-feet of water, which it claims to have salvaged by diverting through its pipe-line, and 45 second-feet of the unappropriated water of said Dry Creek. In their answer and cross-complaint respondents by apt allegations put the individual appellants on proof of their right to change their point of diversion, and the corporate appellant upon proof of its right to use the waters of Dry Creek by virtue of salvage or otherwise. They themselves claim a right to the use of 15 second-feet of the waters· of said Dry Creek prior to any right of the corporate appellant.

The trial court decreed that the individual appellants have the right to use 22 second-feet of said water with priority of 1891, which it decreed ratably to their lands, and granted them the right to change their point of diversion to the intake of the corporate appellant's pipe-line; that respond-

ents are entitled to 9.06 second-feet, share and share alike, with a priority of April 11, 1907, subject to the prior right of the individual appellants but prior to any right of the corporate appellant; that the corporate appellant has the right to use 21.05 second-feet of said water, conserved by the construction of its pipe-line, and also 45 second-feet with priority of June 1, 1912. Among the many assignments of error made by appellants it will be necessary to notice expressly only three, that the court erred: (1) in not finding the exact amount of water saved by the construction of the corporate appellant's pipe-line, (2) in finding that respondents are entitled to 9.86 second-feet of the waters of Dry Creek, (3) in finding and decreeing that the water right of respondents is prior to that of the corporate appellant.

This is the second trial of this action, it having been tried once before and heard on appeal in this court, the decision being found in 30 Ida. 289, 164 Pac. 522. Speaking of the right of individual appellants to change the point of diversion this court said:

"In this action appellants also ask that the right of those taking water through the Farmers' Ditch to change their point of diversion be confirmed. Under the statute their point of diversion may be changed, provided such change causes no injury to any other appropriator of water. Respondents are the only parties who could claim to be injured in this case. Their rights must be determined in this action, and when so determined must be protected. A sufficient amount of water must be permitted to flow down the creek to the point of diversion of respondents to satisfy their rights according to their respective priorities. Subject to rights of respondents, the appellants are entitled to change their point of diversion."

Prior to 1912 the individual appellants diverted their water through a ditch called the "Farmers' Ditch." The evidence shows, without any real conflict, that the loss of water from this ditch, by evaporation and percolation, was something over 50 per cent, so that it was necessary to turn

47 second-feet in at the head of the ditch in order that they might receive their 22 second-feet at the point of application to their lands, being a loss of 25 second-feet. The evidence also shows that the loss in Dry Creek, due to natural causes, between the intake of the corporate appellant's pipe-line and the points of diversion for the ditches of respondents and individual appellants, was about 10 per cent, so that it was necessary for 55 second-feet to pass the intake of the pipe-line in order for 47 second-feet to reach the point of diversion of the individual appellants, and in order for 22 second-feet to reach their land, the loss in Dry Creek between the points mentioned being 11 second-feet. Respondents' point of diversion and the old point of diversion of the individual appellants were not far apart, to wit, about 300 feet. The evidence shows that, by changing the point of diversion to the intake of its pipe-line, the corporate appellant does away with the loss of 10 per cent which occurred between that point and the individual appellants' old point of diversion and the loss of 50 per cent which occurred between the head of the Farmers' Ditch and the land. The corporate appellant contends that it thus saved 33 second-feet of water and is entitled to a right to use the same prior to the right of respondents. It complains of the action of the trial court in decreeing that its right is subsequent to that of respondents.

"A person who, by removing obstructions from a stream and constructing artificial works, prevents the loss of water flowing therein through seepage and evaporation, and materially augments the amount of water available from the stream for a beneficial use, has the right to make use of the amount of water so conserved by his efforts in excess of the natural flow of the stream." (*Reno v. Richards,* 32 Ida. 1, 178 Pac. 81.)

This applies to the act of the corporate appellant in preventing, by the construction and use of its pipe-line, the 10 per cent loss which occurred in Dry Creek itself between the intake of the pipe-line and the old point of diversion of the individual appellants, or the point of diversion of

respondents. To that extent it has materially augmented the amount of water available from the stream for beneficial use and should have a prior right to its use. This is not the case with the saving of 50 per cent which is brought about by eliminating the loss from the old Farmers' Ditch. A water user is entitled to allowance for only a reasonable loss in conducting his water from the point of diversion to the place of use. (*Clark v. Hansen,* 35 Ida. 449, 206 Pac. 808; *Bennett v. Nourse,* 22 Ida. 249, 125 Pac. 1038.) The loss of 50 per cent in the Farmers' Ditch between the old point of diversion of the individual appellants and the place where they applied the water on their land was not a reasonable loss. The farmers could not reasonably have been expected to build a cement lined ditch at the cost of $100,000, as suggested by one of the witnesses. But they could have been reasonably expected to prevent the water spreading out at several places as shown by the evidence. We are satisfied that the loss was unreasonable, excessive and against public policy, and that respondents and their predecessors in interest could have forced the individual appellants to take measures to greatly reduce it if the issue had ever been raised between them. However, it appears that the issue was never raised, that they got along amicably and all seemed to have enough water until the corporate appellant appeared on the scene. Respondents and their successors in interest have used the water from 1909, whereas the pipe-line was built in 1912. Under these circumstances we conclude that the trial court was correct in finding and decreeing that respondents' right is prior to the right of the corporate appellant based upon the fact that it has, by the construction of its pipe-line, prevented the 50 per cent loss in the old Farmers' Ditch.

The lower court found that respondents have a right to 9.86 second-feet with a priority of April 11, 1907. This is evidently based upon amended water license No. 2929 issued by the state engineer on November 28, 1917, some months after the first decision by this court, and the figure 9.06 in the decree is evidently a clerical error. A water license is

only *prima facie* evidence of a water right. (C. S., sec. 5580; *Basinger v. Taylor, supra.*) In order to warrant the issuance of a license it must appear that the water is being used at the place claimed and for the purpose for which it was originally intended. (C. S., sec. 5579.) It appears from the uncontradicted evidence in this case that the land mentioned in the said amended water license, and upon which the water is now being used by respondents, is not the land, nor any of the land, mentioned in respondents' original application for a permit and the accompanying map. The license therefore conveys no valid water right and respondents must depend upon actual appropriation, that is to say, actual diversion and application to beneficial use. (*Basinger v. Taylor, supra; Rabido v. Furey,* 33 Ida. 56, 190 Pac. 73.) They are not entitled to the benefit of the doctrine of relation. (*Basinger v. Taylor, supra.*) The uncontradicted evidence shows that in 1909 respondents irrigated 60 acres of cultivated land and some pasture; in 1910, 160 acres; in 1911, 200 acres; in 1912 (by June), 240 acres in crop and 200 acres in pasture; in 1913, 300 acres, in 1914, 340 acres; in 1915, 400 acres of cultivated land and 100 acres in pasture. The use of water for irrigating pasture land is a beneficial use. (*Neil v. Hyde,* 32 Ida. 576, 186 Pac. 710.) The uncontradicted evidence shows, and the parties stipulated, that one inch to the acre is the reasonable duty of water for all the land in question. The record thus shows respondents using this water for the irrigation of 440 acres by June, 1912. With the duty of water one inch to the acre this would mean that they were using 8.8 second-feet of water. In accordance with the rule laid down by this court on the first appeal, and quoted *supra,* there must be added to this a sufficient amount to insure that the 8.8 second-feet reaches the respondents' point of diversion on Dry Creek. Unless this were done, the change in the point of diversion of the individual appellants would work an injury to respondents. The amount to be added should be measured by the percentage of loss in

Dry Creek between the intake of the corporate appellant's pipe-line and respondents' point of diversion.

The uncontradicted evidence shows that water was applied to the Carey Act Lands of the corporate appellant in July, 1912, to the amount of 5,000 acres, the pipe-line being completed in that month, and that the capacity of the pipe-line and the amount diverted through it at that time was 83 second-feet of water, of which 22 admittedly went to the individual appellants.

It is certainly not desirable to send the case back to the trial court to make findings as to the exact amount of water conserved by the corporate appellant, as requested by it. The judge who tried the case is no longer in office and it would require a new trial. Further trial should be avoided if possible. Findings of fact are absolutely necessary only when there is a real conflict in the evidence. As to the principal questions in the case and those which are the basis of the assignments of error, we find no real conflict. C. S., sec. 6446, provides that the court may reverse, affirm or modify any order or judgment appealed from, and may direct a proper judgment or order to be entered or direct a new trial or further proceeding to be had. Where a case has already been tried twice this court should certainly direct the proper judgment to be entered if it can possibly do so. We are satisfied that this can be done in the present case.

We conclude that the judgment should be modified so as (1) to decree to the corporate appellant 5.5 second-feet of the water of Dry Creek, being the amount of water formerly lost from said creek between the intake of the pipe-line and the individual appellants' point of diversion, and saved by the construction of the pipe-line, this right to be prior to the rights of the individual appellants and of the respondents; (2) to decree to the individual appellants the right to use 22 second-feet of the water of Dry Creek with priority of 1891, the point of diversion to be the intake of the pipe-line of the corporate appellant, said water to be used upon

and divided ratably among the lands of said appellants as set forth in the judgment; (3) to decree to respondents the right to use 8.8 second-feet of the water of Dry Creek as of June, 1912, to be diverted at respondents' present point of diversion for use on the lands described in the judgment, and to further decree that there shall be turned down said creek from the intake of the corporate appellant's pipe-line 9.77 second-feet of water, being the 8.8 second-feet to which respondents are entitled plus .97 second-feet as a reasonable allowance for the loss from the creek due to natural causes; (4) to decree to the corporate appellant 61 second-feet of the water of Dry Creek with a priority of July, 1912, the point of diversion to be the intake of the pipe-line and the same to be used upon the lands of said appellant described in the judgment; (5) to decree to respondents 1.02 second-feet of the water of Dry Creek as of April, 1915, at their present point of diversion on Dry Creek, this being on account of additional acreage irrigated by them in that year. The 61 second-feet decreed to the corporate appellant is the difference between the 83 second-feet which was diverted through its pipe-line and the 22 second-feet awarded to the individual appellants. The respondents increased the acreage irrigated year by year from 1909 to 1912 and, technically speaking, the judgment might give them varying priorities between those years. This is a matter of no practical importance, however, because a priority of April, 1912, gives them a priority over the corporate appellant to the extent that their right is entitled to be considered prior to its right. Giving them a priority as of April, 1912, thus protects their rights and it is unnecessary to go any further.

The case is remanded to the district court, with orders to modify the judgment as above directed and when so modified it is affirmed. No costs are awarded on this appeal.

Dunn and Lee, JJ., concur.

Budge, J., concurs in the conclusion reached.