(May 29, 1925.)

ROBERT G. MAYS et al., Plaintiffs, v. THE DISTRICT
COURT OF THE SIXTH JUDICIAL DISTRICT
IN AND FOR THE COUNTY OF BUTTE, Honorable
RALPH W. ADAIR, Judge, Defendant.

[237 Pac. 700.]

WRIT OF REVIEW—INQUIRY LIMITED TO QUESTION OF JURISDICTION.

1. On writ of review the inquiry is limited to the sole question
of whether or not the court below exceeded its jurisdiction, and
for that purpose only will the facts be inquired into. Such errors
as the court may have committed upon the trial are subject to
review upon appeal from the final judgment.

2. *Held,* that the temporary order of the lower court in this
case, directing distribution of the waters of the streams in ques-
tion, it not being made to appear that the court exceeded its
jurisdiction in making such order, cannot be reviewed upon writ of
review.

Original proceeding for writ of review of temporary order
distributing waters of streams among users. Motion to
quash writ *sustained.*

Whitcomb, Cowen & Clark, for Plaintiffs.

In order to give the court jurisdiction to make an order
of this character, the issue must be tendered by the plead-
ings. (15 C. J., p. 734., sec. 34, notes 85 and 92; *Hutts v.
Martin,* 134 Ind. 587, 33 N. E. 676; *Charles v. White,* 214
Mo. 187, 127 Am. St. 674, 112 S. W. 545; *State v. Muench,*
217 Mo. 124, 129 Am. St. 536, 117 S. W. 25; *Sache v.
Wallace,* 101 Minn. 169, 118 Am. St. 612, 11 Ann. Cas.
348, 112 N. W. 386, 11 L. R. A., N. S., 803, and case note;
*Reynolds v. Stockton,* 140 U. S. 254, 11 Sup. Ct. 773, 35
L. ed. 464; 15 R. C. L., p. 604, sec. 43, title "Judgments";
*North Western Clearance Co. v. Jennings,* 106 Or. 291, 209
Pac. 875, 210 Pac. 884.)

Publisher's Note.

1. Nature and scope of bill of review, see note in 20 Am. Dec. 160.

The court has no jurisdiction to enter any order having the effect of an injunction or restraining order before final decision, without requiring a bond. (*Price v. Grice,* 10 Ida. 443, 79 Pac. 387; *Wiles v. Northern Star Min. Co.,* 13 Ida. 326, 89 Pac. 1053; *MacWaters v. Stockslager,* 29 Ida. 803, 162 Pac. 671.)

Peterson & Coffin for Respondents.

The purpose of the writ of review is not to correct judicial errors or mistakes of the inferior tribunal, the review authorized by the statute being restricted to the sole legal questions as to whether such inferior tribunal has regularly pursued the authority conferred upon it by law; and if such inferior tribunal has exceeded its lawful jurisdiction, have the petitioners for the writ a plain, speedy and adequate remedy by appeal or otherwise than by the writ of review? (C. S., sec. 7249; *McConnell v. Board of Commrs.,* 11 Ida. 652, 83 Pac. 494; *Canadian Bank of Commerce v. Wood,* 13 Ida. 794, 93 Pac. 257; *Gunderson v. District Court,* 14 Ida. 478, 94 Pac. 166; *Coeur d'Alene Min. Co. v. Woods,* 15 Ida. 26, 96 Pac. 210; *Utah Assn. of Credit Men v. Budge,* 16 Ida. 751, 102 Pac. 390, 691; *Lansdon v. State Board, etc.,* 18 Ida. 596, 111 Pac. 133.)

BUDGE, J.—In October, 1920, Blaine County Investment Company, for convenience hereinafter called the company, commenced an action in the district court of the sixth judicial district for Butte county to quiet its title to the use of the waters of Little Lost River and tributaries, in which action Robert G. Mays and others were defendants, among whom are all plaintiffs herein.

The case being at issue, the cause was referred to Hon. L. E. Glennon, as referee, to take testimony and to report to the court his findings of fact and conclusions of law and submit a proposed form of decree. The referee on June 28, 1924, submitted his preliminary report, in which he made definite findings on the rights of all parties to the use of the waters of the streams, and recommended that the court

immediately enter a temporary order for the direction of the water-master in the distribution of water for the 1924 irrigation season, and also that the court retain jurisdiction of the cause for one year for the purpose of determining the remaining questions in the case, and for the purpose of correcting any errors made by the referee in his determination of the matter.

Upon motion of the company, the making of a temporary or interlocutory order following the recommendation of the referee came on for hearing before the judge of the court at Blackfoot on July 1, 1924, all parties interested appearing by their respective counsel. The judge on that date made a temporary order by which the water-master was directed to distribute the waters of the streams in controversy according to the terms of the order for the remainder of the 1924 irrigation season.

To review this order of July 1, 1924, as amended by subsequent order of July 9, 1924, a petition for writ of review was filed by the plaintiffs in this court on July 22, 1924; the writ was granted August 12, 1924. To the writ a motion to quash was filed April 2, 1925.

The temporary order awards to Perry Basinger and others of the same priority a right to the use of 22 second-feet of the water of Dry Creek and further provides that when the natural flow at the intake of the pipe-line of the company in less than 49 second-feet, the right to the use of the waters of said creek allowed to Basinger et al. shall be reduced 22/49 of such deficiency. Petitioners' objection to the temporary order is directed against the clause providing for reduction in case of shortage in the natural flow.

It is first urged that this latter clause in the order violates the rights decreed to some of the petitioners in the case of *Basinger et al. v. Taylor et al.*, 36 Ida. 591, 211 Pac. 1085, upon the theory that since this court in that case awarded Basinger and other parties in interest 22 second-feet of the waters of Dry Creek diverted at the intake of the pipe-line of the company, they are entitled to receive that amount at that diversion point under all circumstances.

In the case above referred to, the rights of the appellants therein *inter se* were not litigated; the right decreed petitioners was a right decreed as against Taylor et al. The court had not before it the question as to what proportion of a possible shortage in the natural flow of Dry Creek should be borne by petitioners and by the company, nor did it determine who should bear transmission losses in the pipeline system. The rights of the company and petitioners, as between themselves, apparently depend upon a contract either not involved in the issues made in *Basinger et al. v. Taylor et al., supra,* or not construed therein touching the mutual rights of the parties. We, therefore, cannot say that the action of the trial court in providing for a reduction in water delivery to petitioners in the event of a shortage in the natural flow of Dry Creek was a violation of a decreed right and by reason thereof in excess of the trial court's jurisdiction.

It is next contended by petitioners that the court was without jurisdiction to make the order reducing water delivery to them in the event of a shortage in the natural flow of Dry Creek in view of admissions made in the company's complaint, particularly at paragraph X.

In that paragraph it is alleged that for the purpose of saving losses in the carriage of Dry Creek water by open ditches and natural channels, for insuring a permanent water supply to petitioners through the irrigation season, and for the purpose of obtaining a prior right to the use of the waters of that stream to be thereby saved in excess of existing appropriations, the company's predecessor in interest, in the spring of 1912, entered into an agreement with certain of the petitioners, claimants to the use of Dry Creek waters, for the construction by such predecessor of a pipe-line and ditch for diverting the waters of Dry Creek through this pipe-line and ditch, Corral Creek and Wet Creek to the ditch of petitioners, where water for petitioners' use would be delivered them, and the remainder allowed to flow into Little Lost River to fill the company's appropriations. It is also alleged that when there was sufficient water in Dry

40 Idaho—51

Creek, there was diverted at the pipe-line intake on Dry Creek 100 second-feet of water, of which 22 second-feet were delivered to the petitioners at their own ditch, and the remainder used to satisfy the company's appropriations. These allegations, petitioners state, were not denied by them.

As the pleadings do not set out this pipe-line contract or any extract from it, we cannot determine therefrom whether this contract actually carried out the purpose alleged in the complaint, or gave petitioners the right to 22 second-feet of water prior to any appropriations of the company carried in the same pipe-line, or what prorating, if any, would be done in the event of a general shortage in the flow of Dry Creek. Hence we conclude that the pleadings did not prohibit the trial court from passing upon those points, and that, in passing upon them, it did not exceed its jurisdiction.

Petitioners further object that the temporary order of July 1, 1924, and its amendments, violate decreed rights of certain of the petitioners in and to the use of the waters of Sawmill Creek, are made contrary to admissions in the company's complaint, and are accordingly not within the issues.

The complaint at paragraph XII alleges that the predecessor in interest of the company constructed a canal with a capacity of 200 second-feet of water with headgate on Sawmill Creek for the carriage of the waters of that creek to Pass Creek and thence to Little Lost River; that the construction of said canal saved percolation losses amounting to 36 second-feet of water, which amount was added to the general supply of Little Lost River, and has been applied to beneficial use by the said company. There is no denial by petitioners of this allegation other than as implied by the terms of a stipulation entered into between the parties by which the affirmative allegations of the pleadings in the case were deemed denied without the necessity of filing formal answer.

The original order awarded 1,000 inches of the waters of Sawmill Creek to the company prior to all other rights, upon the theory that the company had reclaimed water in that amount. Following a further recommendation of the ref-

eree, the trial judge, on July 9, 1924, modified the temporary order by conditioning the delivery to the company of this 1,000 inches of water upon the delivery by it through its Sawmill Creek ditch to Pass Creek of not less than 3,000 inches of Sawmill Creek water, and providing that when the water so delivered is less than 3,000 inches, the company should be entitled to only one-third of the quantity delivered into Pass Creek and be charged with its proper part of transmission loss from Pass Creek to head of its canal. On August 8, 1924, following a report by a civil engineer indicating that the saving effected was but two per cent of the water of Sawmill Creek, the judge again modified the temporary order by providing that two per cent of the water discharged into Little Lost River through said canal should be delivered to the company, and the remaining ninety-eight per cent to the other water users.

Under the pleadings the court had jurisdiction to determine the amount of the saving, if any, of Sawmill Creek water made by the construction of the canal, and to provide for its distribution, and in so doing it was acting within its jurisdiction.

Our inquiry is limited to the sole question of whether or not the court below exceeded its jurisdiction, and for that purpose only will the facts be inquired into. What errors the court may have committed upon the trial are subject to be reviewed upon appeal from the final judgment. We conclude, therefore, that the order of the trial court directing distribution of the waters of the streams in question cannot be reviewed in this proceeding. The motion to quash the writ is granted. Costs are awarded to defendant.

William A. Lee, C. J., Wm. E. Lee, Givens and Taylor, JJ., concur.