(No. 6239. May 31, 1935.)

BLAINE COUNTY CANAL CO., a Corporation, and M. H. WOODS, on Behalf of Himself and on Behalf of All Other Water Users Similarly Situated, Such Water Users Being All the Water Users Under BLAINE COUNTY INVESTMENT CO. PROJECT, Appellants, v. R. W. FARIS, Commissioner of Reclamation of the State of Idaho, and N. W. HANSEN, Water-master of Dist. No. 9, Little Lost River, State of Idaho, Respondents.

[45 Pac. (2d) 796.]

O. R. Baum and R. L. Black, for Appellants.

Jones, Pomeroy & Jones, B. H. Miller, Attorney General, and Leo M. Bresnahan, Assistant Attorney General, for Respondents.

GIVENS, C. J.—Appellants sought unsuccessfully in the district court by *mandamus* to compel the respondent watermaster to apportion certain waters of Dry Creek between appellant Canal Co. and Perry Basinger, Emily Basinger, O. P. Williams, Robert Williams, Harold Williams, Stanley Williams and John Williams, heirs at law of A. H. Williams, deceased, Estate of J. H. Mudd and Otto Hoebel, administrator of the Estate of J. H. Mudd, in accordance with appellants' interpretation of a contract between appellants and the above original appropriators from Dry Creek, and various decisions and opinions heretofore rendered with regard to waters of Little Lost River, of which Dry Creek is a high-water tributary, that appellants should, superior to such appropriators, receive 275 inches or 5.5 feet when there was that amount of water flowing in Dry Creek at the intake of its pipe-line or any less amount thereof.

As appears from the previous decisions touching upon this matter (*Basinger et al. v. Taylor,* 30 Ida. 289, 164 Pac. 522; *Basinger et al. v. Taylor,* 36 Ida. 591, 211 Pac. 1085; *Mays v. District Court,* 40 Ida. 798, 237 Pac. 700; *Blaine County Investment Co. v. Mays,* 49 Ida. 766, 291 Pac. 1055;

*Blaine County Investment Co. v. Mays,* 52 Ida. 381, 15 Pac. (2d) 734), and the record in this case, appellant company claims it was awarded the 5.5 feet as salvaged or saved water, secured by the construction of a pipe-line and ditch, and which 5.5 feet was declared in *Basinger et al. v. Taylor,* (36 Ida. 591) *supra,* to have been water retrieved from what would otherwise have been lost by seepage and percolation, in flowing down the natural channel of Dry Creek and the old Farmers Ditch, the original diversion ditch used by the other appropriators mentioned herein.

The decision in *Basinger et al. v. Taylor,* (30 Ida. 289) *supra,* did not pass upon or consider the relative rights of appellants and the individual appropriators herein, the controversy there being between these parties as joint appellants and the water-master, predecessor to respondent Hansen herein and the Taylors. The complaint stating:

"That there is no conflict in the rights of the plaintiffs herein and each of them have a common right and interest in having their rights and interests determined and settled as herein alleged."

By stipulation the decrees in *Kyle v. Jones,* July 6, 1907, and March 20, 1920, are considered as part of the record herein, which later is the decree reviewed in *Basinger et al. v. Taylor,* (36 Ida. 591) *supra.* The portions of that decree material herein were paragraphs III and V, in substance as follows: Blaine County Irrigation Co. was adjudged 22.05 second-feet conserved by its pipe-line, subject only to the prior rights of the Taylors, and a later right of 45 second-feet not involved herein, and that when the flow of Dry Creek was insufficient to be of benefit to the Taylors after the 22 second-feet of the individual users herein mentioned had been supplied, then the company could turn all the water down the pipe-line.

This court in *Basinger et al. v. Taylor,* (36 Ida. 591) *supra,* ordered these provisions modified as there set forth.

The decree of July 6, 1907, gave Basinger et al. all their respective rights not disputed as to initial amounts with no date of priority.

Pursuant to the decision in *Basinger et al. v. Taylor,* (36 Ida. 591) *supra,* the trial court, February 26, 1923, entered its amended decree as follows:

"I.

"That the plaintiff Blaine County Irrigation Company, Limited, is entitled to and hereby is decreed a prior right to the waters of Dry Creek in Custer County, Idaho, situate, to the extent of 5.5 cubic feet per second of time thereof, the same being the water by it conserved and saved by the construction of its pipe line and irrigation works, said water to be diverted through its pipe line at a point N. 81 degrees W. 14250 feet from the Northwest corner of Section 19, Township 10 North, Range 26 East B. M.; their right to which such water is adjudged to be prior in point of time and right to any other right in and to the water of said stream.

"II.

"That there be and hereby is decreed to the plaintiffs Perry Basinger, C. M. Mulkey, O. P. Williams, A. H. Williams, J. N. Wilde, and W. H. Bartell, twenty-two cubic feet per second of time of the waters of said Dry Creek, with priority as of April 1, 1891, to be by them diverted through said pipe line at said point of diversion; which such waters are decreed ratably to the lands of said several plaintiffs as follows":

. . . . . . . . . . . .

"IV.

"That there is hereby adjudged and decreed to the plaintiff Blaine County Irrigation Company, Limited, Sixty-one (61) cubic feet per second of time of the waters of said creek, to be diverted at its said point of diversion at the intake of said pipe line, subject, only, to its said prior right of 5.5 cubic feet, to the said prior right of said individual

plaintiffs to 22 cubic feet, and the said prior right of intervenors, Samantha J. Taylor and J. B. Taylor to said 9.77 cubic feet; said 61 cubic feet, together with said 5.5 cubic feet, to be appurtenant to and used upon the following described lands, to-wit: . . . . ''

The pipe-line contract referred to in the course of this litigation and named in the stipulation herein as Exhibit ''G'' does not, as indicated in *Blaine County Investment Co. v. Mays,* (49 Ida. 766) *supra,* aid in the solution of the specific problem we are here confronted with.

An examination of the files in *Blaine County Investment Co. v. Mays,* case No. 5080, culminating in the appeal therein in *Blaine County Investment Co. v. Mays,* (49 Ida. 766, 291 Pac. 1055) *supra,* discloses this pertinent allegation in appellants' complaint therein:

''TENTH: That Dry Creek is a natural stream, having its source in said Custer County, and when not diverted or lost by percolation, as hereinafter alleged, flows in a generally northeasterly direction to and into said Little Lost River, but because of the porous nature of the bed of said stream and numerous sinks which occur along the course thereof, both above and below the headgate of what is commonly known as the Farmers' Ditch, hereinafter mentioned, all of the water of said stream, except during the high-water seasons, which usually occur during the months of June and July of each year, percolates or, if not diverted from the channel thereof, would percolate into the gravel underlying the same, and, when not diverted as hereinafter alleged, is or would be entirely lost in respect to the application thereof to any useful or beneficial purpose whatsoever, except as to a small portion thereof during such high-water season; that, during or prior to the year 1891, the defendants, . . . . (then mention the individual users herein and their lands) and thereafter, throughout the irrigation season of each year, and until the construction of the pipe line hereinafter mentioned, except when prevented from so doing by unlawful diversions by other appropriators of water from said stream, and at such times as

the water flowing therein at said place of diversion did not equal such amount, diverted all of the water flowing in said stream, up to a maximum of forty-seven (47) second-feet, into said Farmers' Ditch, from which the same was discharged into Wet Creek, and thence, by using said last-mentioned Creek and Little Lost River as conduits, conducted so much of the water so diverted as was not lost by percolation from said ditch, to-wit; twenty-two (22) second-feet, to and upon the land owned by them respectively, where the same was applied to the irrigation of the land; but that, because of the porous nature of the bed of said stream between the intake of the pipe line hereinafter mentioned and the headgate of said Farmers' Ditch, and of the ground traversed by said Farmers' Ditch, approximately thirty-three (33) second-feet of the waters of said stream percolated into the gravel and was lost in respect to any beneficial use thereof, that is to say, approximately eight second-feet of the water was lost by percolation into the bed of the stream, and approximately twenty-five second-feet was lost by percolation from said Farmers' Ditch in delivering into Wet Creek the said twenty-two (22) second-feet used by said plaintiffs for irrigation of their lands as aforesaid: and because of such losses the said appropriators were unable, during the period of low flow in said stream, to-wit: from about the middle of July to the 1st of September of each year, to obtain more than approximately one-half of the water so appropriated by them; that, for the purpose of avoiding such losses and conserving the water of said stream, as well as of insuring a permanent supply throughout the irrigation season of each year for said defendants, and also of obtaining for itself the benefit of and prior rights to use the water which could be saved thereby to the volume of said stream in excess of the requirements of said individual appropriators, and also for the purpose of appropriating a part of the theretofore unappropriated waters of said stream, the said Blaine County Irrigation Company, Ltd., during the spring of the year 1912, entered into an agreement with said individual appropriators from said

stream whereby it, the said Blaine County Irrigation Company, Ltd., agreed to construct a pipe line and ditch for the purpose of doverting the waters of said stream, theretofore required to satisfy the appropriations of said individual appropriators, at a point approximately five miles above the headgate of said Farmers' Ditch, and the places where said losses of water in the bed of the stream principally occur, and conducting the same into Corrall Creek, a tributary of Wet Creek, and thereby using said Creeks as carriers into Little Lost River; that, . . . . (such pipe line and ditch were constructed) the said Blaine County Irrigation Company, Ltd., and the plaintiff, its successors-in-interest, have diverted into said pipe line not less than one hundred (100) second-feet of the waters of said Dry Creek, and same being the twenty-two second-feet of the water claimed by the said individual apropriators, Basinger, Mulkey, O. P. Williams, H. H. Williams, Wilde, Bartell and their successors-in-interest, as aforesaid, thirty-three second-feet of water which was conserved and saved to the volume of the stream by the construction of such works, and forty-five second-feet of the theretofore unappropriated waters of said stream, and that of the waters so diverted by them, have delivered to said individual appropriators, at the point where said Farmers' Ditch discharged into Wet Creek, twenty-two second-feet of water, and by using said Corral Creek, Wet Creek and Little Lost River, and a canal constructed by them, the headgate of which is situated on said Little Lost River at a point south 61 degrees 15′ east 1950 feet from the northwest corner of Section Eleven (11), Township Six (6), North, Range Twenty-eight (28) E. B. & M., and which has a carrying capacity of two hundred thirty (230) second-feet of water, together with the various ditches and laterals leading therefrom, as conduits therefor, have conducted the remainder of the waters so diverted by them, to-wit: seventy-eight (78) second-feet, less only so much thereof as was lost by percolation and evaporation, to and upon the land hereinafter described where the same has been applied to beneficial use by it and its patrons, viz.: in the

irrigation of the land and the growing of crops of hay, grain and vegetables thereon.''

and asks appropriate quiet title relief. J. H. Mudd, now deceased, but whose estate is party herein, in his answer, denied such diversion and asked that his title be quieted as to his appropriation, not denied as to the number of inches. Williams did not specifically deny paragraph 10 above of appellants' complaint, but asserted his rights to water in four appropriations granted him.

The Basingers admitted paragraph 10 and cross-complained as follows, first alleging that the individual users herein were jointly decreed 22 second-feet of the waters of Dry Creek, Basingers having 320 inches thereof, and that they:

'' . . . . entered into an agreement with said plaintiff, whereby said plaintiff agreed to construct and did subsequently construct a pipe line and ditch for the purpose of diverting the waters of said Dry Creek from said Dry Creek thru Corrall Creek, a tributary of Wet Creek, and thereby using said creeks as conduits, said agreement being made and said ditch and pipe line being constructed for the purpose of saving and conserving water to the said plaintiff and to the aforesaid defendants as in paragraph tenth of plaintiff's complaint alleged, and that ever since said date, the said defendant, Perry Basinger has used and employed the said pipe line and the said Corrall Creek and the said Wet Creek as conduits for the carrying of and diverting of the amount of water by him herein claimed from Dry Creek, a ditch from the said Wet Creek having been constructed by the said defendant, Perry Basinger and the said Defendant Emily Basinger for the diverting of the waters of Dry Creek to and from said Dry Creek, to and upon the said lands of the said Perry Basinger and Emily Basinger, for beneficial purposes; and that said agreement so made as aforesaid is now and has since the spring of 1912 has been and now is a valid and subsisting agreement and the said plaintiff is bound thereby and the said agreement and the conveying of water thereunder has resulted in

the saving and conserving of water both to the plaintiff and to the defendants, Perry Basinger and Emily Basinger.''

The referee reported as follows:

'' . . . . It seems clear to me that all parties thereto understood that the parties of the first part were to receive through the pipe line of the party of the second part an amount of water equivalent to that which they had previously received through what was known as the Farmers Ditch. My interpretation of the contract, based upon the contract itself and the attending circumstances of its execution and the purpose sought to be accomplished, is that it so provides. In other words, the company was to have the benefit of any saving of water which might be effected and the farmers were to lose nothing by the change.

''So construing the contract, the parties of the first part thereto, and their successors, are entitled to have delivered to them, collectively, by the plaintiff corporation, its successors and assigns, at a point where the same will be available for diversion to their respective places of use, twenty-two second feet of water whenever the flow of Dry Creek is such that they would receive that amount under the conditions prevailing at the time the contract was made. This point of delivery is not specifically designated in the contract and, as there is no extrinsic evidence on that question, it can only be determined by considering the context of the contract itself. It is specified in the contract, at least inferentially that by extending the Basinger-Mulkey Ditch to Wet Creek, which the parties of the first part obligated themselves to do, they would be relieved of loss in the transmission of the water to which they were entitled at that point. The contract, in specific terms, imposed upon them the duty of constructing said ditch. The uncontradicted testimony of Perry Basinger is that they built this ditch at a cost to them of about one thousand dollars.

''Viewing the contract as a whole in the light of this special burden imposed on the farmers who are parties thereto, after having determined, as heretofore stated, that

the contract imposes upon the plaintiff the general duty of saving them from loss in the transmission of this water, it seems to me to be consonant with the spirit of the whole transaction to require the plaintiff to stand the transmission loss to the point on Wet Creek where the Basinger-Mulkey Ditch diverts therefrom.

"It is shown that by actual measurement, made on July 6, 1912 (Tr. 1369) 2,430 inches at the intake of the pipe line, carried through the channel of Dry Creek and the Farmers Ditch, supplied eleven hundred inches at the point where the Farmers Ditch emptied into Wet Creek. There is other evidence showing a loss of about 5.5 second feet in the channel of Dry Creek and about fifty per cent in the Farmers Ditch. There is no evidence showing the loss between the point where the old Farmers Ditch emptied into Wet Creek and the head of the Basinger-Mulkey Ditch but the testimony of Mr. Crandall shows that the natural loss in Wet Creek is not very great. However, this becomes immaterial because the plaintiff should be required to stand this loss, whether it be great or small. It would appear from all of the evidence that about forty-nine second feet flowing in Dry Creek at the intake of the pipe line would be required to supply twenty-two second feet at the point on Wet Creek where the Basinger-Mulkey Ditch diverts therefrom, if taken through the natural channel of Dry Creek and said Farmers Ditch and Wet Creek. It must be conceded that this loss is excessive and would constitute a waste of water but in view of the fact that no one objected and that, prior to any such objection being made, the plaintiff undertook to prevent such excessive loss and provided means which seem to have overcome the loss to a large extent, at least, it is entitled to the benefit of such saving of water as between it and the other parties to the contract in question.

"It does not seem possible to more than reasonably approximate the amount of these losses or the saving made by the improved system because of the variance which occurs therein under varying conditions. But taking forty-nine

second feet as a basis, I conclude that when there is a natural flow in Dry Creek at the intake of the plaintiff's pipe line of forty-nine second feet, or more, defendants, Perry Basinger, C. M. Mulkey, A. H. Williams, J. N. Wilde, William Bartel Sr., and O. P. Williams, and their successors in interest, are entitled to have delivered to them, collectively, at the head of the Basinger-Mulkey Ditch on Wet Creek, or at such other point on Wet Creek as the said parties may divert said water, twenty-two second feet of water; and that when said natural flow is less than that amount the amount which they are to receive should be reduced in the ratio that twenty-two second feet of water bears to forty-nine second feet of water. To this point the plaintiff corporation should stand all transmission losses. From the head of the Basinger-Mulkey Ditch on Wet Creek any of such water as may be conveyed beyond that point should be charged with its proportionate share of transmission losses.''

and responsive findings followed:

`` . . . . that pursuant to such agreement the said Blaine County Irrigation Company, Ltd., constructed a pipe line having a carrying capacity of approximately one hundred second feet of water, the intake to which said pipe line is situated on Dry Creek at a point North 81 degrees 14,250 feet from the Northwest Corner of Section 19, Township 10 North, Range 26 East of the Boise Meridian, in Custer County, Idaho, and also a ditch having an equal carrying capacity extending from the lower end of said pipe line to said Corral Creek; that said pipe line and ditch were completed on or about the 12th day of July, 1912 and thereupon and thereafter the said plaintiff and its predecessor in interest diverted into and conveyed through said pipe line and ditch all of the waters of Dry Creek available for said purpose including the water appropriated and claimed by the defendants last above named; that by such means much of the water theretofore lost by percolation and seepage has been saved; that of the water so lost by percolation and seepage in the natural channel of Dry

Creek between the head of said pipe line and the head of the so-called Farmers' Ditch, the plaintiff and its predecessors in interest have conserved and saved five and five-tenths (5.5) second feet; that of the loss theretofore occurring in the so-called Farmers' Ditch, a saving of approximately seventeen cubic feet of water per second of time has been made, less the loss in transmitting said water through said pipe line, canal and the channels of Corral Creek and Wet Creek to the head of the Basinger-Mulkey Ditch, where the portion of said water belonging to the last above named defendants is to be measured, which transmission loss is chargeable to the saving allowed the plaintiff corporation at the head of its pipe line.''

" . . . . that said plaintiff corporation and its predecessors in interest have appropriated and applied to a beneficial use in the irrigation of said lands the waters of Little Lost River and its tributaries in amounts and with dates of priority as follows:

|  | (Natural Flow Right) | Priority |
|---|---|---|
| Dry Creek: | 275 inches | April 1, 1891 |
| " " | 3050 " | July 1, 1912 |
| Little Lost River: | 600 " | January 23, 1905 |
| " " " | 7250 " | January 14, 1908 |

Saw Mill Creek: (Amount of Saving as Given in Finding)''

and the individual users were given their requested appropriations and priorities with this conclusion:

"That the parties and their successors in interest to that certain contract entered into on April 30, 1912 by and between Perry Basinger, C. M. Mulkey, A. H. Williams, J. N. Wilde, William Bartel, Sr., and O. P. Williams, parties of the first part and the Blaine County Irrigation Company, Limited, party of the second part, are bound by the terms and conditions thereof. The plaintiff herein and its successors and assigns being bound to maintain its certain pipe line therein mentioned and other conduits in condition so as to deliver to the other parties thereto, their heirs, successors and assigns, at the Basinger-Mulkey Ditch on Wet Creek

twenty-two cubic feet per second of time of the waters of Dry Creek, at all times during the irrigation season of each and every year, whenever the unobstructed flow of Dry Creek at the intake of said pipe line is not less than forty-nine cubic feet per second of time and the equivalent of 22/49 of such flow whenever it shall be less than forty-nine second feet; and the other parties to said contract, their heirs, successors and assigns, being bound at all times to permit the delivery of said water in the manner aforesaid, allowing the plaintiff, its successors and assigns, any saving of water that may be effected thereby; and they are entitled to a decree of this court fixing and confirming their respective rights and obligations.''

and a confirmatory decree followed, providing as to the point herein:

''That the rights of the parties and their successors in interest to that certain contract entered into on the 30th day of April, 1912 by and between Perry Basinger, C. M. Mulkey, A. H. Williams, J. N. Wilde, William Bartel, Sr., and O. P. Williams, parties of the first part, and the Blaine County Irrigation Company, Ltd., party of the second part, are hereby confirmed; and the plaintiff herein, and its successors and assigns, are hereby required to maintain that certain pipe line therein mentioned, and other conduits, in condition so as to deliver to the other parties thereto, their heirs, successors and assigns, at the head of the Basinger-Mulkey Ditch on Wet Creek, twenty-two cubic feet per second of time of the waters of Dry Creek at all times during the irrigation season of each and every year, whenever the unobstructed flow of Dry Creek at the intake of said pipe line is not less than 49 cubic feet per second of time and the equivalent of 22/49s of such flow whenever it shall be less than 49 second feet; and the other parties to said contract, their heirs, successors and assigns are hereby required, at all times, to permit the delivery of said water in the manner aforesaid, allowing the plaintiff, its

successors and assigns any saving of water that may be effected thereby.''

. . . . . . . . . . .

''That the plaintiff shall allow to flow through its reservoir and pipe line and through the valve in said pipe line into the natural channel of Dry Creek at all times between November first of each year and April first of the year following, a sufficient quantity of water which, taken together with the seepage from plaintiff's said reservoir reaching the natural channel of Dry Creek, will furnish the cross-complainants J. B. Taylor and Samanthua J. Taylor one cubic foot per second of time of water, for domestic purposes, at the head of their ditch on Dry Creek near the Larsen Camp.

''That the rights to the use of the waters of Dry Creek herein awarded to Otto Hoebel, as administrator of the estate of J. H. Mudd, deceased, E. B. Jones, Estate of A. H. Williams, deceased, O. P. Williams, Perry Basinger and Emily Basinger are subject to the limitation that said parties shall only be entitled to the full amount of the award, respectively, when the flow of Dry Creek, at the intake of the pipe line of the plaintiff in this action, is forty-nine cubic feet per second of time, or more, and when such flow is less than forty-nine cubic feet per second of time then said parties, above named, shall be entitled to only 22/49s of such flow delivered at the head of the Basinger-Mulkey Ditch on Wet Creek and the water master, or other officer in charge of the distribution of such water, shall regulate the delivery thereof accordingly.''

In *Blaine County Investment Co. v. Mays,* (49 Ida. 766) *supra,* the court said:

''The appellants also offered evidence to the effect that a subsequent contract more clearly stating the situation with regard to this matter had been made. The evidence of the subsequent contract was so unsatisfactory that the referee found no subsequent contract had been made, and in this finding we believe he was clearly justified. The contract as introduced does not indicate that it was the intention of

the parties that the users of the canal should receive through the pipe-line more water than they had theretofore received through their ditch. They were relieved from the necessity of keeping up the canal, which apparently had been very expensive. They were also freed from their controversy with the Taylors. This would have been a sufficient consideration for them to make the contract and to permit the diversion of the Dry Creek water saved by the pipe-line, otherwise lost if diverted down Dry Creek and through the canal. Under former conditions, if less than 49 second-feet was flowing in Dry Creek at the point of intake of the pipe-line, clearly the canal users would have received less water, proportioned at least approximately as 22 is to 49; and we believe the referee and the court were justified in placing this construction upon the contract and so awarding the relative rights.''

The order amending the supplemental decree as of May 11, 1933, did not affect this phase of the situation, but in *Blaine County Investment Co. v. Mays,* (52 Ida. 381, 15 Pac. (2d) 734), *supra,* the court said this:

''In *Basinger v. Taylor, supra* (36 Ida. 591), this court said:

'' 'We conclude that the judgment should be modified so as (1) to decree to the corporate appellant (Blaine County Irrigation Company, Ltd., predecessor in interest of Blaine County Investment Company) 5.5 second-feet of the water of Dry Creek, being the amount of water formerly lost from said creek between the intake of the pipe-line and the individual appellants' point of diversion and saved by the construction of the pipe-line, this right to be prior to the rights of the individual appellants and of the respondents.'

''The judgment should be corrected in this respect, and when so corrected will be affirmed. No cost allowed.''

From these records it thus appears it has been several times judicially declared as a fact that before the construction of the pipe-line, 49 feet was required at the point of the intake of the pipe, as originally flowing down Dry Creek and through the Farmers Ditch, to supply the in-

dividual appropriators with 22 feet at their point of application. Appellants claimed the difference or 33 feet as saved water because not lost when carried through the pipe. The court, however, in *Basinger and Blaine County v. Taylor,* (36 Ida. 591) *supra,* gave appellant company but 5.5 feet, with a priority of April 1, 1891, as against a priority of April 15, 1891, for the other appropriators herein, and so reaffirmed in *Blaine County Investment Co. v. Mays,* (52 Ida. 381) *supra.*

The major part of the controversy so far as this matter is concerned has heretofore been between appellant Canal Company and the other appropriators herein, together asserting their joint and several interests as against the Taylors, likewise appropriators from Dry Creek. The Taylors are not in this present action which squarely raises the issue of the disposition of the water between appellant Canal Company and the other appropriators mentioned herein, when the waters of Dry Creek are less than 49 feet at the pipe-line intake.

Concededly by both sides we are concerned only with a correct interpretation of previous pertinent judicial pronouncements anent these water rights, no new evidence was introduced, and by stipulation only previous records being considered, all of the essential portions of which have been above set forth so that we may have herein a connected picture.

Viewing the relative rights herein involved as they existed prior to the construction of the pipe-line, it is obvious that as the natural water flow in Dry Creek fell below 49 feet, the water available for the individual appropriators mentioned herein, coming down Dry Creek, thence through their ditch to and down Wet Creek to their points of application, would gradually decrease, until when there was only 33 feet or less at the point of intake of the pipe-line, there would be no water at their point of application. It would seem, therefore, that the correct interpretation of the contract and decrees on this subject would result in this definite statement of the relative rights herein involved: that since ap-

pellant company has saved by its pipe-line all of the natural flow of Dry Creek excepting a negligible amount lost in transporting it through Corral and Wet Creek, when the flow of water at the intake of the pipe-line is between 49 feet and 33 second-feet, the individual appropriators mentioned herein are entitled to 22/49 thereof; that when the flow falls below 33 feet, appellant Canal Company is entitled to 5.5 feet thereof, and the individual appropriators the balance, which gives them the benefit of their contract and their priority as against appellant company's later rights, appellant Canal Company being entitled to no more than 5.5 feet as saved water; that when the flow of the stream at the intake is just 5.5 or less, appellant company is entitled to all of such flow, as it has all been saved by the appellant Canal Company and none of it under the old system of diversion would ever have reached the individual appropriators mentioned herein.

The cause is therefore reversed and remanded with instructions to the trial court to enter judgment in accordance with the above, directing the water-master to deliver the water involved herein as above specified.

No costs allowed.

Morgan and Ailshie, JJ., concur.

Budge, J., did not participate.

Holden, J., deemed himself disqualified and did not participate.